73972, 73973. McCULLOHS SERVICE STATION, INC.
et al. v. WILKES; and vice versa.
(359 SE2d 745)

POPE, Judge.

Appellants McCullohs Service Station, Inc. and Charles A. McCullohs brought this action against appellee Talmadge J. Wilkes alleging negligence in failing to obtain a certain amount of automobile liability insurance coverage. Following discovery appellee moved for summary judgment which was granted "as it relates to a negligence claim" and denied "as [it] relates to a fraud claim." Appellants appeal the grant of summary judgment, and appellee cross-appeals the denial.

Construing the evidence most favorably toward appellants as the parties opposing the summary judgment motion (*Morris v. Pulliam*, 168 Ga. App. 442 (2) (309 SE2d 423) (1983)), the record discloses the following facts: In early April of 1984 appellee, an independent insurance agent/agency, was asked by appellants to procure $500,000 in automobile liability insurance for a Chevron service station which appellant operated pursuant to a lease agreement with Chevron USA, Inc. The Chevron lease made reference to a $1,000,000 umbrella policy which provided coverage for automobile liability in excess of $500,000 in underlying coverage. This lease agreement had been in effect for several years, and Mr. McCullohs, although not certain he had provided same to appellee for review, assumed appellee was familiar with its terms by virtue of their (appellants' and appellee's) long business relationship and appellee's having obtained insurance coverage for other local Chevron service stations. Prior to this time

appellants had only been insured for $100,000 of automobile liability coverage. The impetus for appellants' request for increased coverage was a quote for insurance coverage given to them by another insurance agency. The quote was for split limits of $300,000/$500,000 for automobile liability coverage.

On April 23, 1984 appellee issued to Chevron USA, Inc., a "Certificate of Insurance" setting forth the named insured, the name of the insurer, the policy number and the coverage afforded to appellants thereby; a copy of same was provided to appellants. The certificate stated: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies listed. . . ." Appellee issued this certificate in keeping with his policy of issuing such certificates before the expiration of appellants' lease (Chevron had required such procedure in the past), even though the listed policy had not in fact been issued. The certificate indicated that appellants had garage liability coverage of $500,000 and automobile liability coverage of a like amount for the period April 23, 1984 to April 23, 1985. (Appellee contends that the entry of $500,000 of automobile liability coverage was a "clerical error" made in his office.)

On May 2, 1984 Mr. McCullohs telephoned appellee because he knew the previous policy had expired and that the service station thus had no insurance coverage. Mr. McCullohs testified to the substance of that conversation: "He [appellee] told me he couldn't touch this . . . quote [from the other insurance agency]; and I asked him about what it would run and . . . he quoted me [an amount] and I told him . . . that I had been doing business with him all of these years and I didn't want to do business [with the other, larger agency.] . . . I asked him would I have the same coverage . . . that I was quoted [by the other agency] and he told me I could not add any additional automobiles to it but I would have the same coverage."

Approximately two months later (June or July 1984) appellee delivered an insurance policy issued by an insurer different from the one named on the April 23 certificate of insurance. This policy provided coverage from May 1, 1984 to May 1, 1985. Mr. McCullohs testified: "He brought it in and gave me a new insurance card, and I asked him what was the new insurance card for and he said changed companies because he got me a better rate. I said well, there's nothing wrong with that. He said that he would put the policy over there in the box . . . where I had the other policies. I had some old policies that were not any good and if [I] wanted [him] to, he would throw those away. I said fine, go ahead. So, he stuck it over there in that box. Q. So, you didn't [sic?] discuss the fact that he did change companies for you. A. Yes, sir. Q. . . . Did you discuss anything else about whether or not there were any other changes in the kind of coverage that you had? A.

No. Q. Did you ask him specifically whether or not he had obtained for you the same kind of automobile liability limits that had been quoted to you by the [other agency]? A. Well, I had certificate of insurance in the drawer . . . and I assumed that I had all of the coverage that I needed. . . . Q. You were aware that at the time that Mr. Wilkes made the delivery of that policy it was a policy by another company, a company other than [the one named in the certificate of insurance,] true? A. Yes. Q. . . . [W]hen you obtained the new policy . . . did you read it? A. No, sir. Q. Did you look it over at all? A. No, sir. . . . Q. Mr. Wilkes did not prevent you from reading or examining the policy, did he? A. No, sir. Q. If you wanted to ask him any questions about it from your prior experience, I assume you would have known that he would have been happy to talk to you about it, wouldn't he? A. I'm sure he would have. I have been doing business with him all of these years and I didn't feel like it was necessary. . . . I never felt like I needed to question him about anything."

In early August of 1984 one of appellants' vehicles was involved in a serious accident which ultimately resulted in liability of $1,300,000. Appellants' automobile liability insurance covered only $100,000 of the loss, the limit of the policy, and the umbrella policy provided by the Chevron lease covered the loss only in excess of $500,000. Appellants sued appellee to recover the $400,000 difference between the coverage they had requested and that actually obtained by appellee.

1. Appellants' negligence claim is controlled by the holding in *Ethridge v. Assoc. Muts.*, 160 Ga. App. 687 (288 SE2d 58) (1981): "In *Wright Body Works v. Columbus Interstate Ins. Agency*, 233 Ga. 268 (210 SE2d 801) [(1974)], the Supreme Court recognized that under appropriate circumstances the broker or agent who held himself out as an expert in the field of insurance and who performed such expert services on behalf of an insured could be liable ex delicto for his negligence in failing to perform those services adequately. . . . In such circumstances, it is not necessary and perhaps futile for the insured to examine its policy. . . . This case was further examined and explained in the case of *Mayes v. Hodges*, 142 Ga. App. 538 (236 SE2d 494) [(1977), rev'd, 240 Ga. 643 (242 SE2d 160) (1978)]. . . . That case [holds] that whether the agent is a broker acting for the insured or a dependant agency acting for the insurer is not material. So long as the insured is required to rely upon the agent to exercise the agent's expertise, the rule announced in *Wright*, supra, will apply." *Ethridge*, supra at 688-689.

As in *Ethridge*, however, this is far from the situation we find in the case at bar. Here appellants informed appellee of the exact amount of automobile liability insurance desired, i.e., $500,000. There is no evidence that appellee had any discretion in the type or amount

of insurance. "The facts of this case establish a contractual relationship rather than the negligent performance of a fiducial duty. We [find] that the case of *Barnes v. Mangham*, 153 Ga. App. 540 (265 SE2d 867) [(1980)] is dispositive of this case. . . . The evidence demands a finding that [appellants] failed to comply with [their] legal duty to examine [the] contract, observe what coverage it provided and, if the coverage was not correct, either reject the policy as written when tendered, or renegotiate [the] contract with the insurer. [Appellants were] not only free to examine the contract [they] were under a duty to do so; and if [they] had done that [they] would have observed just what coverage it provided. If it was not what [they] wished to have [they] could have renegotiated (the) contract, or, if [appellee] was unwilling to do that, [they] could have returned it as unacceptable and negotiated a contract with another [agency]." (Citation and punctuation omitted.) *Ethridge*, supra at 689.

Appellants were under a legal duty to read the policy issued to them, and they failed to comply with that duty. For the reasons stated herein, appellee was entitled to the grant of summary judgment in his favor as to appellants' negligence claim. Accord *Turner, Wood &c., Inc. v. Reed*, 169 Ga. App. 213 (311 SE2d 859) (1983); *Georgia Mut. Ins. Co. v. Meadors*, 138 Ga. App. 486 (226 SE2d 318) (1976); *S & A Corp. v. Berger & Co.*, 111 Ga. App. 39 (140 SE2d 509) (1965); *Grizzle v. Guarantee Ins. Co.*, 602 FSupp. 465 (N.D. Ga. 1984).

2. Appellants' complaint as amended alleges that when appellee delivered the new policy of insurance in June or July 1984, he "misrepresented to Charles McCullohs that the amount of insurance coverage was the same as shown on that Certificate of Insurance dated April 23, 1984. . . ." It is clear from Mr. McCullohs' own testimony set forth above that there is no factual predicate for this allegation of fraud. There being no evidence of any misrepresentation on the part of appellee in connection with the new policy of insurance, the trial court erred in denying appellee's motion for summary judgment on appellants' fraud claim. See *King v. Brasington*, 252 Ga. 109 (1) (312 SE2d 111) (1984).

*Judgment affirmed in Case No. 73972. Judgment reversed in Case No. 73973. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED JULY 14, 1987.

*Stephen G. Gunby*, for appellants.
*Michael T. Thornton, Michael L. McGlamry*, for appellee.