A03A1459. DOWSE et al. v. SOUTHERN GUARANTY INSURANCE COMPANY.
(588 SE2d 234)

BLACKBURN, Presiding Judge.

Following the trial court's grant of summary judgment to Southern Guaranty Insurance Company ("SGIC") in this garnishment

action, Robert and Ursula Dowse ("the Dowses") appeal, arguing that the trial court erred in holding (1) that Ulysses Cutter, Sr. Plaster & All Texture Stucco Company, Inc. ("Cutter, Inc."), the defendant in the underlying action, was fully released by a settlement agreement, and (2) that the insurance policy could not be garnished because Cutter, Inc. was not legally obligated to pay the Dowses' claim, and also arguing (3) that questions of fact remain concerning the coverage issue, thus making summary judgment inappropriate. For the reasons that follow, we reverse.

> A de novo standard of review applies to an appeal from the grant of a motion for summary judgment, which grant is proper only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We view the evidence and draw all reasonable inferences in the light most favorable to the nonmovant.

(Footnote omitted.) *A Tow, Inc. v. Williams.*[1]

So viewed, the record shows that the Dowses filed suit against Cutter, Inc. for defective construction and installation of an exterior insulation and finishing system on their home, alleging negligence, breach of warranty, and bad faith. Cutter, Inc., which was insured under a general commercial liability policy by SGIC, gave timely notice of the suit to SGIC. SGIC responded by advising Cutter, Inc. that the claims brought against it by the Dowses were not covered by the general commercial liability policy it had issued to Cutter, Inc. and declining to defend or indemnify Cutter, Inc.

After SGIC declined to provide a defense or cover any of its liabilities, Cutter, Inc. and Ulysses Cutter, Sr., individually, entered into a settlement agreement with the Dowses. As part of the agreement, Cutter, Inc. dismissed its answer to the Dowses' complaint. The Dowses then filed for entry of default and requested a hearing on damages. The trial court tried the issue of damages, and a judgment was rendered for the Dowses in the amount of $83,040.29, together with interest and costs.

The Dowses subsequently filed a garnishment action against SGIC, claiming that the insurance policy issued to Cutter, Inc. was a garnishable asset. SGIC answered, maintaining that it was not in possession of any funds that were subject to the garnishment, and also moved for summary judgment. The trial court granted SGIC's motion for summary judgment, and this appeal followed.

1. In their first enumeration of error, the Dowses argue that the trial court erred in finding that Cutter, Inc. was fully released by the

---

[1] *A Tow, Inc. v. Williams*, 245 Ga. App. 661, 662 (538 SE2d 542) (2000).

settlement agreement because it confused Cutter, Inc. with Ulysses Cutter, Sr., an individual, who was fully released by the agreement. We agree.

There is some language in the settlement agreement which, if read in isolation and out of context, would be appropriately employed in a general release of Cutter, Inc. "However, the object of rules of interpretation is to discover the true intent of the parties, and in doing this we are to take the whole of the instrument together, and to consider this with the surrounding circumstances." (Punctuation omitted.) *Bevill v. North Bros. Co.*[2] Taking the settlement agreement as a whole, we find that it clearly indicates that it was not the Dowses' intention to release Cutter, Inc. from all liability.

The settlement agreement was entered into between Ulysses Cutter, Sr., individually, and Ulysses Cutter, Sr. Plaster & All Texture Stucco Company, Inc. (collectively referred to in the agreement as the "First Party") and Robert and Ursula Dowse (the "Second Party"). By the terms of the settlement, the Dowses agreed to "fully release and forever discharge Ulysses Cutter, Sr., individually," from any suits or claims. The Dowses also agreed that they would not seek to recover or collect any sum as against Ulysses Cutter, Sr., individually, or Cutter, Inc.,

> except, however, the Second Party may seek to recover any funds available to First Party as indemnity under Southern Guaranty Insurance Policy No. 00CPP13492, or any other available policies of insurance, for the claims of Second Party in the Lawsuit, it being the express intent of all Parties hereto to enter into an agreement providing that Second Party shall limit their recovery to whatever Second Party may recover under the Southern Guaranty Insurance Policy No. 00CPP13492, or any other available policies of insurance, whether as an assignee of the benefits of this Policy or as a judgment creditor of Ulysses Cutter, Sr. Plaster and All Texture Stucco Co., Inc.

Additionally, the Dowses agreed "not to collect any judgment obtained in the Lawsuit, from Ulysses Cutter, Sr., individually, but shall only look to and make for any sums recoverable under" the SGIC policy. The Dowses agreed to execute a full and final release in favor of Cutter, Inc. only in the event that a court determined that the insurance policy issued by SGIC, or any other policies of insurance, provided no coverage for their claims.

These provisions of the settlement agreement make it clear that

[2] *Bevill v. North Bros. Co.*, 168 Ga. App. 97, 99 (1) (308 SE2d 215) (1983).

the trial court erred in holding that the Dowses executed a full and complete release in favor of Cutter, Inc., the defendant in the garnishment action. Both Cutter, Inc. and Ulysses Cutter, Sr., the owner of Cutter, Inc., were parties to the settlement agreement. "The courts of this state have said many times that a corporation and its owner, even a sole owner, are separate and distinct." *Shelby Ins. Co. v. Ford.*[3] Only a party identified in a settlement agreement as a released party is discharged by such an instrument. *Lackey v. McDowell.*[4] Ulysses Cutter, Sr., *individually*, is the only party released by the settlement agreement from all liability. The release of Ulysses Cutter, Sr. did not serve to release Cutter, Inc., a separate legal entity. A full and final release in favor of Cutter, Inc. is provided only in the event that it is determined in a court of law that there is no insurance coverage for the claims of the Dowses.

We also note that there is no full and complete release of claims where some claims are specifically reserved by any of the parties. *Ingram v. Star Touch Communications.*[5] In this case, the Dowses specifically reserved their claims against the SGIC insurance policy in the settlement agreement manifesting their intent not to fully release Cutter, Inc.

SGIC points to the distinction between a covenant not to execute and a covenant not to sue, correctly noting that a covenant not to execute operates as a general release while a covenant not to sue, which "is not a present abandonment or relinquishment of a right or claim but merely an agreement not to enforce an existing cause of action," does not. (Punctuation omitted.) *Bevill*, supra at 98. This is, however, a distinction without a difference in this case since the Dowses did not agree to refrain from executing on any and all claims against Cutter, Inc. but instead specifically reserved its claims against Cutter, Inc. to the extent of the SGIC insurance policy.

2. The Dowses also urge as error the trial court's holding that the release of Cutter, Inc. had the effect of releasing SGIC from any liability under the insurance policy. Again, we agree.

SGIC argued that the insurance policy requires it to pay only those sums which Cutter, Inc. would be legally obligated to pay, and that since Cutter, Inc., by the terms of the settlement agreement, is not legally obligated to pay anything, SGIC, which stands in Cutter, Inc.'s shoes in the garnishment action, is not legally obligated to pay anything either. We disagree.

---

[3] *Shelby Ins. Co. v. Ford*, 265 Ga. 232, 233 (454 SE2d 464) (1995).

[4] *Lackey v. McDowell*, 262 Ga. 185, 186 (415 SE2d 902) (1992).

[5] *Ingram v. Star Touch Communications*, 215 Ga. App. 329, 330 (450 SE2d 334) (1994).

First, in Georgia,

> [w]hen an insurer denies coverage and absolutely refuses to defend an action against an insured, when it could do so with reservation of its rights as to coverage, the legal consequence of such refusal is that it waives the provisions of the policy against a settlement by the insured and becomes bound to pay the amount of any settlement made in good faith plus expenses and attorneys' fees.

*Ga. Southern &c. R. Co. v. United States Cas. Co.*[6] SGIC, which refused to provide any defense to Cutter, Inc., is estopped by that refusal from asserting that any settlement which the Dowses made with Cutter, Inc. relieves it of its obligations under the insurance policy.

Other courts have similarly held that an insurer may be liable to an injured party when the insured before judgment is protected by an agreement not to execute, basing their holdings, as did this Court in *Ga. Southern*, on the right of the insured to protect itself from the bad faith conduct of its insurer. In *Metcalf v. Hartford Accident &c. Co.*,[7] the court held that a judgment the plaintiff had obtained against an insured created a legal liability within the meaning of the insurance policy even though the plaintiff had entered into an agreement with the insured not to attempt collection of the judgment against the insured from any of his assets other than his insurance policy. The court stated:

> The defendant is obligated under its insurance policy to defend the suit brought against Holder, an additional insured. This it refused to do. Holder was thereupon required to engage an attorney and provide his own defense. With the insurance company denying liability, Holder was entitled to use all reasonable means of avoiding personal liability. It was to his personal interest to consent to the $4,500 judgment and accept an agreement from the plaintiff not to execute on his property other than any rights to indemnity he might have in the designated insurance policies. The matter is of no consequence to defendant if its claim of nonliability is correct. Since its claim of nonliability has no validity, and it having declined to defend the action when called

---

[6] *Ga. Southern &c. R. Co. v. United States Cas. Co.*, 97 Ga. App. 242, 244 (102 SE2d 500) (1958).

[7] *Metcalf v. Hartford Accident &c. Co.*, 176 Neb. 468 (126 NW2d 471) (1964).

upon to do so, the defendant is in no position to attack the judgment in the absence of fraud, collusion, or bad faith.

Id. at 475-476.

In *Coblentz v. American Surety Co. of New York*,[8] the court rejected the insurance carrier's argument that it was not subject to garnishment because its insured was not legally obligated to pay a judgment. Following *Metcalf*, the court held:

Having elected to leave [the insured] to his own defenses, American Surety could not later complain about the form of the judgment. "It is a well-settled principle that where a person is responsible over to another, either by operation of law or express contract, and he is duly notified of the pendency of the suit against the person to whom he is liable over, and full opportunity is afforded him to defend the action, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he appeared or not."

Id. at 1063.

Both *Metcalf* and *Coblentz* cite *Fullerton v. United States Cas. Co.*[9] In that case, the court said:

We are cited to a clause of the contract to the effect that the right of the insured to maintain an action against the company is limited to cases of "loss actually sustained and paid in money in satisfaction of a judgment after trial of the issue," and it is said that the payment to Mrs. Jacobson by plaintiff was by way of a settlement, and not in satisfaction of a judgment. But this provision can avail the appellant nothing in this case. It repudiated its obligation to assume and carry the defense to final judgment; and, having abandoned the case, it left the assured at liberty to take up the defense and contest the claim to final judgment, or, if so advised, to make the most favorable settlement possible.

Id. at 231-232 (IV). See also *Pruyn v. Agricultural Ins. Co.*[10] ("[c]ourts have for some time accepted the principle that an insured who is abandoned by its liability insurer is free to make the best settlement possible with the third party claimant, including a stipulated judgment with a covenant not to execute").

---

[8] *Coblentz v. American Surety Co. of New York*, 416 F2d 1059 (5th Cir. 1969).

[9] *Fullerton v. United States Cas. Co.*, 184 Iowa 219 (167 NW 700) (1918).

[10] *Pruyn v. Agricultural Ins. Co.*, 36 Cal. App.4th 500, 515 (2) (42 Cal. Rptr.2d 295) (1995).

Other courts have used an alternative line of reasoning in holding that a covenant not to enforce against a party does not release that party's insurance carrier. These courts hold that a covenant not to execute is simply a contract, not a release, so that the underlying tort liability remains and a breach of contract action lies if an injured party seeks to execute on its judgment. In *Globe Indem. Co. v. Blomfield*,[11] the court reasoned, "A covenant not to execute is merely a contract and not a release. It seems reasonable to conclude, therefore, that the insured's tort liability remains but that he has an action for breach of contract if the plaintiff attempts to collect the judgment in violation of the covenant." (Citation omitted.) Likewise, the court in *Red Giant Oil Co. v. Lawlor*[12] concluded that a covenant not to execute

> was merely an agreement by [plaintiff] and was not a release. [Insured's] underlying tort liability therefore remains. [Insured] would have a breach of contract remedy if [plaintiff] tried to collect on the judgment against him. [Insured] is therefore still "legally obligated" to [plaintiff], and [the insurer] must still make good on its policy promise to pay, if there is coverage.

The *Red Giant* court found the *Metcalf* rationale "an additional reason to hold that a stipulated judgment and covenant not to execute do not invalidate coverage," that reason being "that an insurer may not hide behind policy language after it abandons its insured and the insured settles the claim by such an agreement." Id. at 533. Finally, in *Bishop v. Crowther*,[13] the court, in holding that a covenant not to execute did not extinguish the insurer's obligations, reiterated the words of an earlier decision in the case:

> Defendant's argument fails to distinguish between such concepts as liability, damages, judgment and execution. Defendant's liability and the amount of damages were both established by the judgment. The execution determines which of defendant's assets will be used to satisfy the judgment. An agreement limiting execution to specific assets does not negate damages.

We find this reasoning persuasive. Moreover, this reasoning is not at odds with *American Cas. Co. of Reading, Pennsylvania v. Griffith*,[14]

---

[11] *Globe Indem. Co. v. Blomfield*, 115 Ariz. 5, 8 (562 P2d 1372) (1977).

[12] *Red Giant Oil Co. v. Lawlor*, 528 NW2d 524, 532-533 (IV) (Iowa 1995).

[13] *Bishop v. Crowther*, 101 Ill. App.3d 933, 936 (428 NE2d 1021) (1981).

[14] *American Cas. Co. of Reading, Pennsylvania v. Griffith*, 107 Ga. App. 224 (129 SE2d 549) (1963).

cited by SGIC as support for its position, since in that case the instrument at issue was not an enforceable contract while the settlement agreement in this case is.

Policy considerations also support our joining the many courts which "look with disfavor on the idea that a covenant not to enforce against one party automatically releases that party's insurance carrier." *Auto-Owners Ins. Co. v. St. Paul Fire &c. Ins. Co.*[15] First, holding that SGIC is not released from its obligations under the policy by the Dowses' settlement agreement with Cutter, Inc. forwards the important goal of enforcing the intentions of the parties to the agreement. As our Supreme Court has said, "The fundamental rule, the rule which swallows up almost all others in construing a paper, is to give that meaning which will best carry into effect the intent of the parties." *Paul v. Paul.*[16] In this case, our holding enforces the parties' clear intention that SGIC not be released.

Second, it advances the strong public policy "favoring the availability to injured persons of the liability insurance of those whose negligence is the cause of their plight." *Deblon v. Beaton.*[17] Cutter, Inc. secured insurance and paid premiums to cover instances of liability such as the one damaging the Dowses, both Cutter, Inc. and the Dowses are entitled to the protection of that insurance coverage, and SGIC should not be permitted to refuse to supply it.

In addition, the rule encourages settlements. "We have long recognized that it is sound public policy to encourage parties to engage in settlement negotiations to the end that litigation may be avoided." *Williams v. St. Paul Cos.*[18]

Finally, we note that the circumstances of this case preclude concerns about collusion between the Dowses and Cutter, Inc. After default was entered, the Dowses requested a hearing on damages. The trial court tried the issue of damages and rendered a judgment. "These circumstances necessarily involve significant independent adjudicatory action by the court, thus mitigating the risk of a fraudulent or collusive settlement between an insured and the claimant." *Pruyn*, supra at 517 (3).

3. The Dowses' remaining enumeration of error, that the existence of questions of fact concerning the coverage issue precludes summary judgment, is moot.

*Judgment reversed. Ellington and Phipps, JJ., concur.*

---

[15] *Auto-Owners Ins. Co. v. St. Paul Fire &c. Ins. Co.*, 547 S2d 148, 152 (Fla. App. 1989).
[16] *Paul v. Paul*, 235 Ga. 382, 384 (219 SE2d 736) (1975).
[17] *Deblon v. Beaton*, 103 N.J. Super. 345, 351 (II) (247 A2d 172) (1968).
[18] *Williams v. St. Paul Cos.*, 228 Ga. App. 656, 658 (492 SE2d 560) (1997).

Decided July 22, 2003 —
Reconsideration denied September 29, 2003 — 

*Eugene C. Brooks IV*, for appellants.
*Mabry & McClelland, Robert M. Darroch, Nathan W. Kotas*, for appellee.