A04A2138. J. SMITH LANIER & COMPANY v. ACCEPTANCE
INDEMNITY INSURANCE COMPANY et al.
A05A0939. SOUTHEASTERN FORGE, INC. v. J. SMITH LANIER
& COMPANY et al.

(612 SE2d 843)

PHIPPS, Judge.

These appeals arose from the same lower court case involving insurance coverage issues and are consolidated in this opinion. In Case No. A04A2138, J. Smith Lanier & Company (JSL) appeals the grant of summary judgment against it, as a third-party plaintiff, and in favor of Acceptance Indemnity Insurance Company, as a third-party defendant. Because JSL has failed to demonstrate reversible error, we affirm. In Case No. A05A0939, Southeastern Forge, Inc. (SEF) challenges the grant of partial summary judgment against it in favor of JSL. For reasons that follow, we affirm in part and reverse in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] We review a trial court's grant of summary judgment de novo, viewing the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

Viewed in this light, the record shows that JSL, an insurance broker, contracted with SEF, a manufacturer of agricultural blades for bush-hog cutting machines, to procure a policy of excess general liability insurance in the amount of $2 million. JSL prepared and sent SEF's insurance application to an intermediate insurance broker, Leverett Insurance Group, who obtained a premium quotation of $2,000 a year from Acceptance. Acceptance then issued a policy effective October 26, 1998 to October 26, 1999.

During the policy period, in September 1999, a blade manufactured by SEF broke free from a bush-hog cutting machine, amputating the leg of a roadside worker in Texas. In the ensuing lawsuit, the injured worker and his wife named SEF as one of the defendants and made upon SEF a time-limited settlement demand for $3 million, corresponding to the $1 million policy limits of the primary insurance carrier plus the $2 million policy limits of Acceptance. SEF made a request upon the insurance companies to pay the demand. The primary insurance carrier tendered the $1 million policy limits; Acceptance tendered nothing, and the offer to settle expired.

During its investigation of the claim, Acceptance discovered that in August 1998, SEF had been notified about an August 4, 1998

---

[1] OCGA § 9-11-56 (c).
[2] *Canales v. Wilson Southland Ins. Agency*, 261 Ga. App. 529, 530 (583 SE2d 203) (2003).

incident wherein an SEF-manufactured blade broke free from a bush-hog cutting machine being operated beside a Mississippi roadway. The flying blade nearly decapitated a passing driver, who lost control of her vehicle, causing injuries to her passengers. The driver died from her injuries. It is undisputed that the incident was not listed on the application submitted to Acceptance in October 1998.

In July 2000, Acceptance filed an action in federal district court against SEF seeking to have the policy and a subsequent renewal policy declared void ab initio on the grounds that the applications therefor omitted the Mississippi incident from the loss history. The federal court granted a Rule 68 offer of judgment that "[the] insurance policy issued by Acceptance . . . is void ab initio, or from inception, due to the omission of a Mississippi incident in 1998 from the application for such policy. The omission was material to the under-writing of such policy."[3]

Meanwhile, the Texas lawsuit was settled after mediation for about $5 million, $1 million paid by SEF's primary insurance carrier and approximately $4 million paid by the blade's retailer and distributor. In a June 2001 final judgment in that case, a Texas court ordered SEF to indemnify the retailer and distributor in the combined amount of $4,457,676.68 plus post-judgment interest.

Two days after entry of the federal court ruling, SEF filed suit against JSL under theories of negligent failure to procure insurance coverage, breach of contract to procure insurance, and breach of fiduciary duties. It sought to recover "an amount no less than $4.75 million plus interest and costs" that it claimed it had incurred in the Texas case. SEF alleged that it had notified JSL of the Mississippi incident; that JSL had sent notice of the occurrence only to SEF's primary insurance carrier; that in October 1998, JSL prepared an application to obtain $2 million excess liability insurance for SEF; that JSL omitted the Mississippi incident from the applications it forwarded to the intermediate broker to obtain quotations from carriers; that Acceptance issued a policy and a renewal for $2 million based on applications that omitted the Mississippi incident; and that JSL's omission precluded SEF from recovering under the Acceptance policy.

JSL admitted that it had told only the primary insurance carrier about the Mississippi incident, but claimed, among other things, that the omission from SEF's application was not material. JSL also filed a third-party action against Acceptance,[4] alleging that Acceptance

---

[3] *Acceptance Indem. Ins. Co. v. Southeastern Forge &c.*, 209 F. R. D. 697, 698, n. 1 (M.D. Ga. 2002).

[4] The third-party complaint also named Leverett as a third-party defendant, alleging that

had wrongfully denied coverage based on a nonmaterial omission from the application and claiming potential entitlement to contribution or indemnification. Acceptance filed a motion for summary judgment against JSL, and JSL filed a "motion for partial summary judgment on damages" against SEF.

In granting Acceptance's motion for summary judgment, the trial court reasoned that "[i]f the jury finds the omission was not material, which is obviously Defendant JSL's defense, then [SEF] cannot recover against Defendant JSL. As there is no direct loss in that situation, there is no derivative loss to pass on to or share with a third party." Alternatively, the court reasoned, "[i]f the jury finds the omission to be material, the subject excess insurance policy was void as a matter of law pursuant to OCGA § 33-24-7; therefore, there could be no claim or recovery sustained against Acceptance whatsoever."

Seeking to limit SEF's recovery against it, JSL sought rulings that SEF's damages cannot exceed $1.975 million and that, as a matter of law, SEF cannot obtain from it more than the policy limits of $2 million. The court entered an order to that effect and ruled further that SEF's claims alleging breach of fiduciary duties failed as a matter of law.

### Case No. A04A2138

JSL contends that granting summary judgment to Acceptance was error.

Pursuant to OCGA § 9-11-14 (a), a defendant may sue as a third-party defendant one "who is or may be liable to [it] for all or part of the [original] plaintiff's claim against [it]."[5] Further, one who undertakes to procure insurance for another and is guilty of fraud or negligence in that undertaking may be liable for loss or damages.[6] And contribution and indemnification are valid theories upon which third-party liability may be based.[7]

---

it was Leverett's responsibility to complete the loss history on the application submitted to Acceptance. Leverett denied having such responsibility.

[5] See *Vara v. Essex Ins. Co.*, 269 Ga. App. 417, 420 (b) (604 SE2d 260) (2004) ("The object of OCGA § 9-11-14 [is] to facilitate litigants, to save costs, to bring all of the litigants into one proceeding, and to dispose of an entire matter without the expense and the labor of many suits and many trials.") (citation and punctuation omitted).

[6] *Beiter v. Decatur Fed. Savings & Loan Assn.*, 222 Ga. 516, 518 (2) (150 SE2d 687) (1966); *Clark, Davis & Easley Ins. Agency v. Tile Technology*, 217 Ga. App. 809, 810 (459 SE2d 450) (1995).

[7] *State Line Metals v. Aluminum Co. &c.*, 216 Ga. App. 14, 16 (1) (453 SE2d 474) (1995); *North Ga. Elec. Membership Corp. v. Thomason & Holsomback Constr. Co.*, 157 Ga. App. 719, 720 (1) (278 SE2d 433) (1981).

1. JSL contends that if the omission is determined not to be material, then Acceptance could be held liable to it for denying coverage based on a nonmaterial omission.

(a) At the outset, Acceptance argues that JSL is collaterally estopped from asserting that the omission is not material, citing the declaratory judgment by the federal court. We cannot agree.

"In Georgia, the collateral estoppel doctrine precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies."[8] JSL was not a party to the federal action. The record shows that JSL sought to intervene to object to Acceptance's acceptance of a Rule 68 offer of judgment made jointly by SEF, the retailer (and its insurer), and the distributor (and its insurer), specifically asserting that the offer of judgment improperly concluded that the policy was void ab initio due to the omission of the Mississippi incident. Although the federal court recognized that "JSL's only interest in this litigation arises from the *possibility* that [SEF] may seek indemnification from JSL in a later suit based upon JSL's alleged failure to secure the insurance coverage in question,"[9] it dismissed JSL from that action, determining that:

> in order for final judgment to be entered in this case pursuant to the offer of judgment, all of the parties must agree to it or any objecting party must be dismissed from the case prior to the entry of the final judgment. . . . The Court further finds that allowing JSL to remain as a permissive intervenor will unduly delay and prejudice the adjudication of the rights of the original parties, and therefore, the Court finds that JSL should now be dismissed as a party to this lawsuit *without prejudice.*[10]

Furthermore, it cannot be said that any privy of JSL was a party to the federal action. A privy is "one who is represented at [the proceeding] and who is in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right. [Cits.]"[11] "[B]efore privity can be established, the interests of the party must fully represent the

---

[8] (Citations omitted.) *Shields v. BellSouth Advertising & Publishing Corp.*, 273 Ga. 774, 777 (II) (545 SE2d 898) (2001); see *Meagher v. Quick*, 264 Ga. App. 639, 645 (2) (594 SE2d 182) (2003).

[9] *Acceptance Indem. Ins. Co.*, supra at 700-701 (III) (A).

[10] (Emphasis supplied.) Id. at 700 (III).

[11] *Butler v. Turner*, 274 Ga. 566, 568 (1) (555 SE2d 427) (2001).

interests of the privy and be fully congruent with those interests."[12] Plainly, no party remaining in the federal action had an identity of interest with JSL; instead, each such entity claimed that JSL had caused SEF's damages — a position incongruent with JSL's interest. Moreover, the federal court announced in its judgment: "any decision and judgment in this action would have no *res judicata* or collateral estoppel effect on JSL's future rights."[13] Thus, in accordance with Georgia law and consistent with the express ruling of the federal court, JSL is not estopped from asserting in this action what it was barred from asserting in the federal action — that the omission was not material.[14]

(b) Acceptance next argues that, even if it is determined that the omission by JSL was not material, JSL cannot be found liable to SEF — thereby entitling Acceptance to summary judgment on JSL's third-party complaint. We agree.

Acceptance correctly concludes that if JSL is not liable to SEF, then it has no liability to JSL under OCGA § 9-11-14. "[A] third-party complaint must be against one who is or may be *liable to the third-party plaintiff for all or part of the original plaintiff's claim against him*. OCGA § 9-11-14 does not allow the tender of another defendant who is or may be liable to the plaintiff."[15]

2. JSL contends that even if the omission is determined to be material, Acceptance may nonetheless be found liable to it. It claims that, by not seeking a ruling that the policy was void until July 2000, about five months after it learned of the Mississippi incident, Acceptance failed to notify SEF promptly of its intent to rescind the policy and therefore waived its right to do so.

Assuming, without deciding, that Acceptance waived the right to rescind the policy, then Acceptance could not have avoided coverage of the Texas incident based upon JSL's omission of the Mississippi incident from the application. Under that scenario, because JSL's action would not have proximately caused SEF's lack of insurance coverage, JSL would not be liable to SEF.

However, a third-party complaint must be against one who is or may be liable to the third-party plaintiff for all or part of the original plaintiff's claim against it.[16] By contending that Acceptance waived its opportunity to rescind the policy, JSL is claiming that Acceptance — and not it — is liable to SEF. Because OCGA § 9-11-14 does not

---

[12] (Citations and punctuation omitted.) Id.

[13] (Footnote omitted.) *Acceptance Indem. Ins. Co.*, supra at 701.

[14] See id.

[15] (Citation and punctuation omitted; emphasis supplied.) *Kirsch v. Jones*, 219 Ga. App. 50, 52 (2) (464 SE2d 4) (1995).

[16] *Vara*, supra.

allow the tender of another defendant who is or may be liable to the plaintiff,[17] even under its waiver theory, JSL has not shown that the trial court erred in granting summary judgment to Acceptance.

### Case No. A05A0939

3. SEF charges the trial court with impermissibly granting, sua sponte, summary judgment to JSL on its claim for breach of fiduciary duties. SEF points out that the title of JSL's motion for summary judgment made no mention of that claim.

There is no requirement that a motion's title specifically refer to a claim before a trial court can rule upon it. Before entering summary judgment, the trial court must ensure that the party against whom summary judgment is rendered has been given full and fair notice and opportunity to respond to the assertions and arguments made against it.[18] The record reveals that, in a six-page section of JSL's brief in support of its motion, JSL argued that SEF could not recover damages on its claim of breach of fiduciary duty because that claim failed as a matter of law. The record further reveals that SEF filed a brief and a supplemental brief in opposition to JSL's motion and that a hearing on JSL's motion was held. SEF cites to nothing in the record showing that it was not given full and fair notice and opportunity to respond to JSL's claim before the court entered summary judgment on it. Therefore, it has shown no error by this contention.

4. SEF contends that the trial court erred in striking its claim of breach of fiduciary duties based on its determination that there was no fiduciary relationship between it and JSL. Relying on *Nash v. Ohio Nat. Life Ins. Co.*,[19] SEF argues that JSL was acting in a fiduciary relationship with it because it agreed to procure an insurance policy on its behalf.

Although *Nash* provides support for the proposition that a broker may incur some fiduciary duties when granted discretion in the type or amount of insurance to obtain,[20] SEF made no claim that JSL selected either the type or amount of insurance. Nor has SEF cited to any evidence that JSL had any discretion in the type or amount of insurance to procure. Because SEF's reliance upon *Nash* is misplaced and SEF has not otherwise shown that its relationship with JSL was anything more than a contractual one, SEF has failed to show that

---

[17] Id.

[18] See *Aycock v. Calk*, 222 Ga. App. 763, 764 (476 SE2d 274) (1996).

[19] 266 Ga. App. 416 (597 SE2d 512) (2004).

[20] See id. at 420 (1); see also *McCullohs Serv. Station v. Wilkes*, 183 Ga. App. 687, 689-690 (1) (359 SE2d 745) (1987); *Ethridge v. Associated Mutuals*, 160 Ga. App. 687 (288 SE2d 58) (1981).

the trial court erred in striking its claim of breach of fiduciary duties.[21]

5. SEF contends that the trial court erred by limiting the damages it could recover from JSL to $1.975 million. The court's ruling was based upon its interpretation of a loan receipt and two related agreements, each dated August 29, 2002. SEF argues that the trial court misapplied those agreements. We agree.

In the loan receipt, SEF acknowledged receipt of a $2.15 million loan from Acceptance, "repayable only in the event of and to the extent of any net recovery" that SEF collected from any entity that caused the damages that SEF sustained because of that entity's failure to procure excess insurance on SEF's behalf. In return, SEF appointed Acceptance to pursue any such claim in SEF's name.

A related covenant not to execute, entered into by the retailer and distributor of the blade, showed that, in consideration of SEF's payment to them totaling $1.975 million, the recipients agreed not to execute on the Texas judgment "except to the extent of any proceeds in excess of [$2.15 million] paid to [SEF] under the Loan Receipt . . . in any action which it may pursue against any Defendant as a result of any claim for failure to procure excess insurance or breach of any duty owed [SEF]." The retailer and distributor also agreed that any such proceeds would be distributed pursuant to a subordination agreement. Finally, they agreed to mark the Texas judgment "satisfied" if requested to do so by SEF after being notified by SEF and Acceptance that recovery of the funds under the loan receipt had been completed or abandoned.

The related subordination agreement, entered into by SEF, Acceptance, the retailer, and the distributor, set forth that "delivery of [the $2.15 million] will leave certain debts" to the retailer and distributor (in the form of the Texas judgment) "unsatisfied." Pursuant to this agreement, any recovery from an action contemplated by the loan receipt will be applied first to the indebtedness owed under the loan receipt; next to Acceptance's legal fees, costs, or expenses incurred in prosecuting such claim; then "shared on a 50-50 basis between [the retailer and distributor] until the Texas Judgments (inclusive of interest) are fully satisfied"; and finally to SEF, "only after the loan receipt and the Texas Judgments (inclusive of interest) have been fully satisfied." Further, the parties thereto agreed that Acceptance had the exclusive right to compromise claims in a fashion that might lead to no further recovery by SEF, the retailer, or the distributor.

---

[21] See *McCullohs Serv. Station*, supra at 690; *Ethridge*, supra.

Extracting and combining language from these documents, the trial court found that SEF had assigned to Acceptance the right to sue to recover damages arising from any failure to procure excess insurance on SEF's behalf; that in this lawsuit against JSL, Acceptance could compromise claims in a fashion that might lead to no further recovery by SEF, the retailer, or the distributor; and that the retailer and distributor had agreed to leave "unsatisfied" any debts SEF owed them. The trial court stated, "Of the $2.15 million 'loaned' to [SEF], $175,000 was allocated to [SEF] for payment of its litigation expenses. The remaining $1,975,000 was split between [the retailer and the distributor]." The trial court concluded that the retailer and the distributor had released SEF from liability, that SEF's "sole liability in this case" was settled for $1.975 million, and that any greater recovery in this action would constitute unjust enrichment.

The trial court erred in limiting the damages SEF could recover from JSL to $1.975 million. The object of the rules of interpretation is to discover the intent of the parties.[22] While there might be language in these three documents that, when read in isolation, could be understood as limiting SEF's liability to the retailer and distributor, taking the documents as a whole, we find that the parties did not intend for the retailer and distributor to release SEF from liability.

> The usual or ordinary form of loan receipt executed by an insured on payment of a loss to him by his insurer but occasioned by a third party tortfeasor, is valid, is not a subrogation agreement, and allows an action to proceed in the name of the insured against the tortfeasor, subject to control to the extent of its interest by the insurer, and further allows the insurer to recover to the extent of its payment out of any amount collected by the insured in such an action. The loan receipt does not amount to an assignment of the claim. Moreover, a loan receipt does not operate as a release or inure to the benefit of the tortfeasor or its insurer.[23]

Nor did the related agreements operate as a release of liability. They merely ordered the distribution of any recovery among Acceptance, the retailer, and the distributor ("until the Texas judgment[ ] [is] fully satisfied"), and SEF. While the retailer and distributor acknowledged the *possibility* that they may recover nothing more, JSL cites to nothing in the record showing that they had forgiven SEF's debts

---

[22] *Dowse v. Southern Guaranty Ins. Co.*, 263 Ga. App. 435, 437 (1) (588 SE2d 234) (2003), aff'd, *Southern Guaranty Ins. Co. v. Dowse*, 278 Ga. 674 (605 SE2d 27) (2004).

[23] (Citations and punctuation omitted.) *Powers v. Latimer*, 215 Ga. App. 245-246 (1) (450 SE2d 295) (1994).

to them as established by the Texas judgment. Although the retailer and distributor agreed to mark the Texas judgment "satisfied" when and if certain conditions occurred, JSL cites to nothing in the record showing either that the retailer and distributor had marked the Texas judgment "satisfied" or that the conditions that would require them to do so had occurred.

The parties do not dispute that the Texas judgment against SEF remains outstanding in an amount exceeding $4 million. That judgment comprises a significant portion of what SEF seeks to recover from JSL in this lawsuit. Because JSL has failed to show that the damages SEF incurred as a result of JSL's alleged breach of duty cannot exceed $1.975 million, it was not entitled to summary judgment to that effect.

6. SEF contends that the trial court erred in limiting JSL's liability to the policy limits of $2 million. We agree.

The trial court relied on numerous cases with language to the effect that, where a broker undertakes to procure insurance for another and is guilty of fraud or negligence in his undertaking, he is liable for loss or damage "to the limit of the agreed policy."[24] But in none of the cases cited by the trial court, nor in the cases cited by JSL on appeal, was the question resolved whether such broker may be liable for damages in excess of the policy limits. Therefore, the cited language is not binding authority barring liability of a broker in excess of the policy limits.[25]

Under Georgia law, "where a person injured by the insured offers to settle for a sum within the policy limits, and the insurer refuses the offer of settlement, the insurer may be liable to the insured to pay the verdict rendered against the insured even though the verdict exceeds the policy limit of liability," if the insurer is guilty of negligence, fraud, or bad faith.[26] We discern no reason why a broker, whose breach of duty renders a liability insurance policy void such that the insurer

---

[24] (Citations omitted.) *Beiter*, supra; *Home Bldg. & Loan Assn. &c. v. Hester*, 213 Ga. 393, 395 (99 SE2d 87) (1957) (stating that a broker is liable "to the limit of the amount of the agreed policy"); *Robinson v. J. Smith Lanier & Co. &c.*, 220 Ga. App. 737, 738 (1) (470 SE2d 272) (1996) (stating that an agent is liable "to the limit of the agreed policy") (citation and punctuation omitted); *Clark, Davis & Easley Ins. Agency*, supra (stating that an agent is liable "to the limits of the policy"); *Moseley v. Coastal Plains Gin Co.*, 199 Ga. App. 99, 100-101 (1) (a) (404 SE2d 123) (1991) (stating that a broker is liable "to the limit of the agreed policy") (citation and punctuation omitted); *Ga. Farm &c. Ins. Co. v. Arnold*, 175 Ga. App. 850, 851 (1) (334 SE2d 733) (1985) (stating that an agent is liable "to the limit of the agreed policy") (citations and punctuation omitted); *Beavers Ins. Agency v. Roland*, 135 Ga. App. 263 (217 SE2d 484) (1975) (stating that an agent is liable "to the limit of the agreed policy") (citation and punctuation omitted).

[25] See *Callaway v. State*, 275 Ga. 332 (567 SE2d 13) (2002).

[26] *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 870 (1) (310 SE2d 513) (1984); *Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 684 (1) (580 SE2d 519) (2003).

refuses an offer of settlement within the policy limits, should not be held liable to the "insured" for a verdict rendered against it even though the verdict exceeds the policy limit of liability.[27]

SEF's theory of recovery against JSL is that, if JSL had not breached it duty, SEF would have had a $2 million excess general liability insurance policy, pursuant to which Acceptance either (1) would have been obligated to settle the Texas matter within the policy limits, or (2) would have been liable for a verdict rendered against SEF — even if that verdict exceeded the policy limits. SEF claims that because JSL failed to procure a valid policy of insurance, Acceptance refused to tender the $2 million settlement demand; it suffered a subsequent judgment against it of more than $4.4 million; and it has no recourse against Acceptance.

Because JSL has not shown that SEF's loss due to its alleged breach was no more than the policy limits of $2 million, the trial court erred in granting JSL's motion in that regard.

*Judgment affirmed in Case No. A04A2138. Judgment affirmed in part and reversed in part in Case No. A05A0939. Johnson, P. J., and Smith, P. J., concur.*

DECIDED MARCH 29, 2005 —
RECONSIDERATION DENIED APRIL 13, 2005 —

*Hall, Booth, Smith & Slover, Roger S. Sumrall, Russell E. Owens,* for J. Smith Lanier & Company et al.

*Budd, Larner, Rosenbaum, Greenberg & Sade, Gilbert M. Malm, Jennifer C. Kane, Bridgette E. Eckerson, Mabry & McClelland, Rex D. Smith,* for Acceptance Indemnity Insurance Company et al. and Southeastern Forge, Inc.

---

[27] See generally *McCall,* supra; *Brightman,* supra; accord *Topmiller v. Cain,* 657 P2d 638, 641-642 (N.M. Ct. App. 1983) (measure of damages for a broker's breach of a contract to procure insurance is not necessarily limited by the policy limits, but may extend to consequential damages).