## S05G1336. J. SMITH LANIER & COMPANY v. SOUTHEASTERN FORGE, INC. et al.

(630 SE2d 404)

THOMPSON, Justice.

We granted a petition for writ of certiorari to the Court of Appeals in *J. Smith Lanier & Co. v. Acceptance Indem. Ins. Co.*, 272 Ga. App. 789 (612 SE2d 843) (2005), asking the parties to address whether an insurance broker may be held liable for damages in excess of the policy limits suffered by a client based upon the broker's breach of contract to obtain insurance coverage. We answer in the negative and we reverse the judgment of the Court of Appeals to the extent that it conflicts with our ruling today. See id. at 797 (6).

The pertinent facts are as follows: Appellant J. Smith Lanier ("Lanier") is an independent insurance broker; appellee Southeastern Forge, Inc. ("Southeastern"), a manufacturer of agricultural blades, was Lanier's client. In 1998 Lanier agreed to procure primary commercial liability insurance in the amount of $1 million and excess comprehensive general liability coverage in the amount of $2 million on behalf of Southeastern. In accordance with that agreement, Lanier prepared Southeastern's application. A primary liability policy for $1 million was issued by Colony Insurance Company, and Acceptance Indemnity Insurance Company ("Acceptance") issued a $2 million excess liability policy. Although Southeastern had notified Lanier about a loss that occurred earlier in 1998 in which a blade manufactured by Southeastern broke free from a machine in Mississippi causing the death of a passing motorist, Lanier failed to list this event on the application it submitted to Acceptance. Acceptance based its quote for coverage on Lanier's application which showed no losses in 1998.

During the period of the Acceptance policy, a blade manufactured by Southeastern malfunctioned and amputated the leg of a worker in Texas. The injured worker sued in Texas, making a demand on Southeastern for the combined policy limits of $3 million. While investigating the claim, Acceptance learned of the 1998 Mississippi incident which had not been revealed on the application for insurance prepared by Lanier. As a result, the primary liability carrier tendered its policy limits of $1 million, but Acceptance offered nothing in settlement, and the settlement offer expired.[1]

Acceptance brought a declaratory judgment action against Southeastern in the United States District Court for the Middle District of Georgia, seeking a declaration that Lanier's policy with Acceptance

---

[1] That lawsuit eventually settled, and as a result, Southeastern was required to indemnify the retailer and distributor of the blade for close to $4.5 million.

was void ab initio due to the failure to disclose the Mississippi loss in its application. The parties to that action agreed by judgment pursuant to Fed. R. Civ. P. 68 that the Acceptance policy was void. *Acceptance Indem. Ins. Co. v. Southeastern Forge*, 209 FRD 697 (M.D. Ga. 2002).

Southeastern then filed the present action against Lanier in Gwinnett County Superior Court under theories of negligence, breach of fiduciary duty, and breach of contract, seeking to recover the funds it had paid in the Texas action. Lanier answered the complaint and also responded with a third-party action against Acceptance; Acceptance sought and was granted summary judgment. In the main action, Lanier filed a motion for partial summary judgment on the issue of damages, seeking a ruling that if Lanier were found liable for failure to procure insurance, Southeastern cannot obtain more than the $2 million policy limits. The trial court so ordered and also ruled that Southeastern's claim for breach of fiduciary duty failed as a matter of law. In a consolidated opinion, the Court of Appeals upheld the grant of summary judgment to Acceptance, affirmed the striking of the claim for breach of fiduciary duty, but held that the trial court erred in limiting Lanier's liability to the policy limits of $2 million. *J. Smith Lanier*, supra at 797 (6).

Under Georgia law, the potential liability of an insurance broker is limited to the terms of the insurance policy it negligently failed to procure. "[O]ne [who] undertakes to procure insurance for another and is guilty of . . . negligence in his undertaking . . . is liable for loss or damage *to the limit of the agreed policy*." (Emphasis supplied.) *Beiter v. Decatur Fed. Savings &c.*, 222 Ga. 516, 518 (2) (150 SE2d 687) (1966). The rule was first established in Georgia in *Minter v. Ga. Piggly-Wiggly Co.*, 185 Ga. 116 (194 SE 176) (1937), which adopted the rationale of the North Carolina decision of *Elam v. Smithdeal Realty &c. Co.*, 182 N.C. 599 (109 SE 632, 633) (1921):

> where an insurance agent or broker undertakes to procure a policy of insurance for another, affording protection against a designated risk, the law imposes upon him the duty, in the exercise of reasonable care, to perform the duty he has assumed, *and within the amount of the proposed policy* he may be held liable for the loss properly attributable to his negligent default.

(Emphasis supplied.)

This principle has been consistently and unequivocally restated in numerous decisions of our appellate courts.[2] Although the Court of Appeals in *J. Smith Lanier*, supra at 797, n. 24, acknowledged this line of authority, and correctly recited the principles enunciated therein, the court inexplicably held that these cases do not resolve the issue of whether a broker is liable for damages in excess of the policy limits. Id. at 797 (6). Instead, the court relied on *Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683 (580 SE2d 519) (2003) and *McCall v. Allstate Ins. Co.*, 251 Ga. 869 (310 SE2d 513) (1984) as authority relating to an *insurer's* liability for damages in excess of the policy limits occasioned by its bad faith refusal to settle a claim. See OCGA § 33-4-6. In holding the broker to the same standard of liability as that of the insurer, the Court of Appeals erred.

Under OCGA § 33-4-6, an insurer is subject to imposition of a penalty and attorney fees if it refuses in bad faith to pay a covered loss "within 60 days after a demand has been made by the holder of the policy." See also OCGA § 33-7-11 (j) (subjecting insurer to similar penalty and reasonable attorney fees for bad faith refusal to pay uninsured motorist claim). Bad faith claims under the Georgia insurance code, however, "are available only as between insureds and their insurers." *Spicer v. American Home Assur. Co.*, 292 FSupp. 27, 33 (N.D. Ga. 1967). An "insurer" is defined by OCGA § 33-1-2 (4) as "any person engaged as indemnitor, surety, or contractor who issues . . . contracts of insurance by whatever name called." Accord *McGhee v. Kroger Co.*, 150 Ga. App. 291 (2) (257 SE2d 361) (1979). See also *Owens v. Allstate Ins. Co.*, 216 Ga. App. 650 (1) (455 SE2d 368) (1995) (a person who is not a party to the insurance contract may not complain of the bad faith of the insurer toward its policyholder in failing to adjust or compromise a claim). Thus, the Court of Appeals has erroneously imposed the unique statutory duties of insurers on independent brokers who do not issue contracts of insurance and have no duty or ability to evaluate and compromise claims.

Under the law of this state, the liability of an agent or broker who negligently fails to procure insurance "is limited to those losses that would have been covered by the agreed policy." *Robinson v. J. Smith Lanier &c.*, 220 Ga. App. 737, 738 (1) (470 SE2d 272) (1996).[3] Thus,

---

[2] See, e.g., *Home Bldg. &c. v. Hester*, 213 Ga. 393 (99 SE2d 87) (1957); *Case v. RGA Ins. Svcs.*, 239 Ga. App. 1 (3) (521 SE2d 32) (1999); *Robinson v. J. Smith Lanier &c.*, 220 Ga. App. 737 (1) (470 SE2d 272) (1996); *Clark, Davis & Easley Ins. Agency v. Tile Technology*, 217 Ga. App. 809 (459 SE2d 450) (1995); *Moseley v. Coastal Plains Gin Co.*, 199 Ga. App. 99 (1) (a) (404 SE2d 123) (1991); *Ga. Farm Bureau Mut. Ins. Co. v. Arnold*, 175 Ga. App. 850 (1) (334 SE2d 733) (1985); *Beavers Ins. Agency v. Roland*, 135 Ga. App. 263 (217 SE2d 484) (1975).

[3] As noted in 3-13 Appleman on Insurance Law and Practice (2nd ed.), § 13.1, the majority of jurisdictions follow that rule. See, e.g., *MacDonald v. Carpenter & Pelton, Inc.*, 31 AD2d 952 (298 NYS2d 780) (1969) (broker liable for any loss sustained in amount which would have been

we hold that if Lanier were to be found in breach of a contract to obtain insurance coverage, the measure of damages would be no greater than the liability limits of the policy it agreed to procure.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 17, 2006.

*Hall, Booth, Smith & Slover, Roger S. Sumrall, Russell E. Owens,* for appellant.

*Budd, Larner, Gross, Rosenbaum & Greenberg, Gilbert M. Malm, Mabry & McClelland, Rex D. Smith, Joseph J. Dinardo,* for appellees.

---

due if policy had issued); *Chandler v. H.E. Yerkes & Assoc.,* 784 FSupp. 119 (S.D. N.Y. 1992) (under New York law, insurance broker's liability for breach of duty to procure insurance is limited to amount of coverage that would have been provided by insurer); *Howard v. H. Robert Anderson & Assoc.,* 2005 WL 2757239 (Minn. Dist. Ct.) (in suit against broker for failure to procure insurance, the appropriate measure of damages is the policy's liability limit); *Prince v. Royal Indem. Co.,* 541 F2d 646, 650 (7th Cir. 1976) ("Illinois courts have consistently held that the broker's liability covers the full extent of the loss, up to the limits of the policy the broker agreed to procure."); *Appleton Chinese Food Svc. v. Murken Ins.,* 185 Wis.2d 791 (519 NW2d 674) (1994) (damages arising out of a broker's failure to procure insurance are commonly determined by the terms of the policy the agent failed to procure).