A97A1402. WILLIAMS v. ST. PAUL COMPANIES et al.
(492 SE2d 560)

RUFFIN, Judge.

Attorney Peter Williams sued The St. Paul Companies ("St. Paul") alleging St. Paul tortiously interfered with his representation of clients in two separate lawsuits. The trial court granted St. Paul summary judgment, and Williams appealed. For reasons which follow, we affirm.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence

in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." (Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in a light most favorable to Williams, the non-movant, the evidence in this case shows that Williams represented Myrtis Tinsley in a medical malpractice action against the Estate of George Norton, M.D. and an Alabama surgical clinic. Williams also represented Jessie and Bennie Wise in a separate medical malpractice action against the same defendants. St. Paul provided coverage to the defendants in both actions. In an effort to dispose of the two lawsuits, St. Paul proposed an aggregate settlement in which the settlement of each claim was contingent on settlement of the other. According to Williams' affidavit, he rejected the offer because "there was no way, short of violating the attorney-client privilege with Tinsley that [he] could discuss what Tinsley would or would not accept as settlement, with Wise. And, vice versa, [he] could not discuss with Wise what Tinsley would accept as settlement." Williams further asserted in his affidavit that "[i]t was impossible for [him] to perform [his] contract with either or both of [his] clients because of the way in which the settlement offer from Defendant was conditioned." Williams contends that St. Paul's settlement offer constituted a tortious interference with contract because it created this conflict of interest.

To establish a cause of action for tortious interference with existing and prospective contractual relations, a claimant must show "'that the defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury. . . . [T]he term "malicious" or "maliciously" means any unauthorized interference or any interference without justification or excuse. [Cit.]'" *Perry & Co. v. New South Ins. Brokers &c.*, 182 Ga. App. 84, 89 (4) (354 SE2d 852) (1987).

In his response to St. Paul's summary judgment motion, Williams failed to produce any evidence supporting any of the first three elements enumerated above. As to the first two elements, there is no evidence of any improper or malicious conduct by St. Paul in

extending the aggregate settlement offer. We have long recognized that it is sound public policy to encourage parties to engage in settlement negotiations to the end that litigation may be avoided. See *Justice v. Davidson Kennedy Co.*, 194 Ga. App. 585, 586 (391 SE2d 414) (1990); *Continental Ins. Co. v. Fed. Ins. Co.*, 153 Ga. App. 712, 714 (266 SE2d 351) (1980). St. Paul's apparent desire to settle the cases at issue was in furtherance of this public policy. And, though it is preferable to structure such offers in a manner that allows parties to settle their claims independently, the fact that Williams found himself faced with a conflict of interest was not the result of any wrongful conduct by St. Paul, but rather the consequence of Williams representing multiple clients with conflicting or potentially conflicting interests.

Williams' representation of Tinsley and the Wises is governed by Canon 5 of the Code of Professional Responsibility which generally provides that "[a] lawyer should exercise independent professional judgment on behalf of a client." The corresponding Directory Rules ("DR") and Ethical Considerations ("EC") more specifically regulate Williams' representation of both Tinsley and the Wises against a common defendant. EC 5-14 provides that "[m]aintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant." Before Williams agreed to the representation at issue here, he should have recognized the possibility of divergent interests and "explain[ed] fully to each client the implications of the common representation and . . . accept[ed] or continue[d] employment only if the clients consent[ed]." EC 5-16. Furthermore, contrary to Williams' assertion that he could not discuss the aggregate settlement offer with his clients, DR 5-106 provides that "[a] lawyer who represents two or more clients shall not make or participate in the making of an aggregate settlement for the claims of or against his clients, unless each client has consented to the settlement *after being advised* of the existence and nature of all claims involved in the proposed settlement, of the total amount of the settlement, and of the participation of each person in the settlement." (Emphasis supplied.) DR 5-106. Finally, if Williams ultimately found that he could not effectively continue his multiple representation he should have ceased such representation. See EC 5-15; DR 5-105 (B). Again, it was not St. Paul's conduct that caused Williams' dilemma, but his own representation of multiple clients.

Finally, as found by the trial court, Williams failed to produce any evidence that St. Paul directly induced his clients to do, or not do

anything. Inasmuch as he was required to produce such evidence in support of the third element of his cause of action and, as stated above, he failed to produce any evidence supporting the first two elements, the trial court did not err in granting summary judgment to St. Paul. See *Pakwood Indus. v. John Galt Assoc.*, 219 Ga. App. 527, 530 (2) (466 SE2d 226) (1995).

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 1, 1997 — 

*L. B. Kent*, for appellant.
*Peter G. Williams*, pro se.
*Tisinger, Tisinger, Vance & Greer, David F. Miceli*, for appellees.