A97A1050. HOME INSURANCE COMPANY v. WYNN et al.
A97A1051. WYNN v. WYNN et al.
A97A1052. MONTGOMERY v. WYNN et al.
A97A1053. WYNN et al. v. WYNN et al.
(493 SE2d 622)

JOHNSON, Judge.

Jacqueline Wynn ("Mrs. Wynn") is the surviving spouse, sole beneficiary and executrix of the estate of Rufus Wynn. At issue in these appeals is whether Mrs. Wynn, her attorney, and the tortfeasor's insurer acted properly in allocating settlement proceeds in a wrongful death action, when Mrs. Wynn simultaneously represented the decedent's children's interests and her own, competing, interests. Under the circumstances presented in these cases, the jury was authorized to find such conduct by Mrs. Wynn and her attorney was improper. The jury was not authorized, however, to find the action of the tortfeasor's insurer was improper.

Viewed in a light most favorable to the jury's verdict, the evidence shows that Rufus Wynn died when the truck he drove was struck by another truck whose driver had automobile liability insurance through Home Insurance Company. Mr. Wynn was survived by Mrs. Wynn and his four adult sons from a prior marriage. Three of the sons, Dannie, Donnie and Ronnie Wynn, are involved in this action and will collectively be referred to as "the sons."

Mrs. Wynn hired attorney Richard Montgomery, who contacted Home Insurance and advised the company of Mrs. Wynn's intent to bring an action against its insured. Negotiations between Mrs. Wynn, Montgomery and Home Insurance ensued and, three weeks after Mr. Wynn's death, the claim was settled for $650,000. An attorney for Home Insurance informed Montgomery that he needed to make an allocation between the various claims, told Montgomery what factors to consider, and stated that the allocation would have to be reasonable. The attorney for Home Insurance discussed the issue with Montgomery at length. Following these discussions, without

any notice to or involvement of the sons, the settlement was divided as follows: $325,000 was allocated to wrongful death damages, $275,000 was allocated to estate damages associated with Mr. Wynn's pain and suffering, and $50,000 was allocated to Mrs. Wynn for loss of consortium. The sons had a stake only in the wrongful death claim. The sons' share of the $325,000 wrongful death damages award was immediately reduced by $150,000 to pay Montgomery's fee, and Mrs. Wynn signed a promissory note to pay the balance of his $216,000 fee. The sons were not notified of the negotiations or consulted before the terms of the settlement were agreed upon. In fact, they did not learn that the case had been settled until eight months later. Mrs. Wynn deposited the funds earmarked for the sons into an account bearing only her name.

The sons sued Mrs. Wynn, Montgomery, and Home Insurance, claiming that: (1) Mrs. Wynn breached her fiduciary duty to them in allocating the settlement proceeds; and (2) Montgomery and Home Insurance conspired with her to deprive them of their rightful share of the $650,000 settlement and even of that portion of the $325,000 which the defendants set aside for wrongful death damages, since they never received any of those proceeds. The jury agreed and returned a verdict holding the defendants jointly and severally liable in the amount of $243,750 in compensatory damages. The jury also awarded the sons punitive damages in the amounts of $40,000 against Mrs. Wynn, $100,000 against Montgomery, and $100,000 against Home Insurance, and ordered payment of attorney fees by Mrs. Wynn and Montgomery. In separate appeals, Mrs. Wynn, Montgomery, Home Insurance and the sons appeal from the judgment entered on the verdict.

## Case No. A97A1051

1. Mrs. Wynn contends the trial court erred in denying her motion for directed verdict and motion for judgment n.o.v., arguing that the wrongful death statute gives her control over the wrongful death action and the right to settle a wrongful death claim without the concurrence of the children. It is true that the surviving spouse in a wrongful death action acts both as an individual and as a representative of the deceased spouse's children and that the surviving spouse may settle the claim without the children concurring. See *O'Kelley v. Hosp. Auth. of Gwinnett County*, 256 Ga. 373, 374 (349 SE2d 382) (1986); OCGA § 51-4-2 (c). Indeed, the sons concede that Mrs. Wynn had the statutory right to settle the wrongful death claim without their approval. However, as they point out, the instant case involved other claims as well, namely Mrs. Wynn's loss of consortium claim and a pain and suffering claim asserted on behalf of the estate, of

which Mrs. Wynn is the executrix and sole beneficiary. It is her serving simultaneously in these different, competing capacities while settling and dividing the funds which forms the basis of the sons' complaint.

In a wrongful death case, the surviving spouse acts as the children's representative and owes them the duty to act prudently in asserting, prosecuting and settling the claim and to act in the utmost good faith. See *O'Kelley*, supra; *Mack v. Moore*, 256 Ga. 138 (345 SE2d 338) (1986), overruled on other grounds in *Brown v. Liberty Oil &c. Corp.*, 261 Ga. 214, 216 (2) (b) (403 SE2d 806) (1991); OCGA § 23-2-58. At the same time, an executrix of an estate occupies a fiduciary relationship toward parties having an interest in the estate; that relationship also requires the utmost good faith. *Liner v. North*, 188 Ga. App. 677, 678 (2) (373 SE2d 846) (1988). Of course, Mrs. Wynn also has an interest in her own loss of consortium claim. Thus, in negotiating and settling the case, Mrs. Wynn represented herself on the consortium claim, the decedent's estate on the pain and suffering claim, and herself and the sons in the wrongful death claim. Under these circumstances, Mrs. Wynn would benefit most by allocating as little of the settlement proceeds to the wrongful death claim as possible.

An agent cannot place herself in a position in which her duty and interests conflict with those of her principal. *Franco v. Stein Steel &c. Co.*, 227 Ga. 92, 95 (1) (179 SE2d 88) (1970). The agent is not permitted to acquire rights in the settlement antagonistic to the principal's interests. See OCGA § 23-2-59. "It is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction. Consciously or unconsciously [s]he will favor one side as against the other, where there is or may be a conflict of interest. If one of the interests involved is that of the trustee personally, selfishness is apt to lead [her] to give [her]self an advantage. If permitted to represent antagonistic interests the trustee is placed under temptation and is apt in many cases to yield to the natural prompting to give [her]self the benefit of all doubts." (Citations and punctuation omitted.) *Ringer v. Lockhart*, 240 Ga. 82, 84 (239 SE2d 349) (1977). Note that it is not necessary for the beneficiaries to show that the trustee acted in bad faith, gained an advantage, or that they were harmed. Id. The trustee must avoid being placed in such a position, and if she cannot avoid it, she may resign, may fully inform the beneficiaries of the conflict, or may request the court to appoint a guardian ad litem to protect the unprotected interests. If she fails to do any of these things, she proceeds at her own peril. Id. at 85. The wrongful death statute creates a cause of action in the children for breach of the spouse's duty as representative. See *Morris v. Clark*, 189 Ga. App.

228, 231 (2) (375 SE2d 616) (1988).

Mrs. Wynn acted in several different legal capacities and allocated one-half of the settlement proceeds to claims other than the wrongful death claim, namely, claims in which she was the sole beneficiary. Thus, there was evidence to support a finding that Mrs. Wynn breached her fiduciary duty to the sons. Accordingly, it is unnecessary to consider whether she further breached her duty to the sons by depositing their funds into her own account, not notifying them of the settlement, and not disbursing the proceeds to them. The trial court did not err in refusing to grant Mrs. Wynn's motion for directed verdict or judgment n.o.v. See generally *Signsation v. Harper*, 218 Ga. App. 141, 142-143 (2) (460 SE2d 854) (1995); *Hill v. Rodriguez*, 208 Ga. App. 108, 110 (2) (429 SE2d 682) (1993).

2. Mrs. Wynn claims that the trial court erred in denying her motions for summary judgment and for directed verdict on the issue of punitive damages. The denial of the motion for summary judgment becomes moot when the court reviews the evidence upon the trial of the case. *Talmadge v. Talmadge*, 241 Ga. 609 (1) (247 SE2d 61) (1978).

The court did not err in refusing to direct a verdict on the issue of punitive damages. "A breach of fiduciary duties is sufficient to support an award of punitive damages. Whether punitive damages should be awarded for a breach of fiduciary duties is ordinarily a question for the jury." (Citation omitted.) *Daniell v. Clein*, 206 Ga. App. 377, 383 (3) (425 SE2d 344) (1992). There being evidence that Mrs. Wynn breached her fiduciary duties to the sons, the trial court properly denied her motion for a directed verdict as to punitive damages. See generally *Byrne v. Reardon*, 196 Ga. App. 735, 736 (3) (397 SE2d 22) (1990).

3. Mrs. Wynn's argument that the trial court erred in denying her motion for directed verdict as to attorney fees is also without merit. Where there is some evidence to support a finding of bad faith, an award of attorney fees on that basis must be affirmed. *Crocker v. Stevens*, 210 Ga. App. 231, 238 (8) (435 SE2d 690) (1993). Contrary to her contention, the existence of a bona fide controversy will not defeat a claim for attorney fees under OCGA § 13-6-11 when bad faith is an issue. See *First Union Nat. Bank &c. v. Cook*, 223 Ga. App. 374, 380 (9) (477 SE2d 649) (1996). Because there was evidence that Mrs. Wynn represented her own interests at the same time she represented the sons' interests which patently conflicted with hers, allocated a portion of the settlement to herself rather than the sons she also represented, failed to promptly pay the sons after doing so, and deposited their shares into an account bearing only her name, the trial court properly denied Mrs. Wynn's motion for directed verdict on the claim for attorney fees. See generally *Ross v. Hagler*, 209 Ga.

App. 201, 204 (3) (433 SE2d 124) (1993).

4. Mrs. Wynn claims the trial court erred in: refusing to give her Request to Charge No. 23 in its entirety; giving the sons' Request to Charge No. 53; and refusing to give Montgomery's Request to Charge No. 21. However, she has failed to show this Court where in the record she raised any of these objections below. No such objections are made on the transcript pages referenced in her brief. Therefore, these enumerations will not be considered. See Court of Appeals Rule 27 (a), (c) (3).

5. Mrs. Wynn argues that "[t]he verdict, which indicated that there could be no claim for pain and suffering," was against the weight of the evidence based upon the testimony of one of the witnesses. The verdict form returned by the jury does not, in any way, indicate whether the pain and suffering claim was proven. Moreover, there was also evidence that Mr. Wynn died on impact and therefore had no viable pain and suffering claim. It is not the function of an appellate court to weigh evidence or determine witness credibility, but only to determine evidence sufficiency. See *Rockdale Body Shop v. Thompson*, 222 Ga. App. 821, 823 (2) (476 SE2d 22) (1996). This enumeration is without merit.

## Case No. A97A1052

6. Richard Montgomery lists eighteen enumerations of error, but groups them into six arguments which bear little relation to his enumerated list of alleged errors. This presentation is in violation of Court of Appeals Rule 27 (c) (1), (3). "Our requirements as to the form of appellate briefs were created, not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court." (Citations and punctuation omitted.) *Bennett v. Moody*, 225 Ga. App. 95, 96 (483 SE2d 350) (1997). While we will consider the enumerations, we point out that by so combining the arguments, Montgomery leaves the culling out of the various assertions to the mercy of our perception. See *Hayes v. State*, 189 Ga. App. 39 (1) (375 SE2d 114) (1988).

7. Montgomery argues the trial court erred in allowing the jury to consider the sons' legal malpractice claim against him when there was no attorney-client relationship between them. He contends he represented only Mrs. Wynn. However, as discussed above, Mrs. Wynn prosecuted not only her own interests, but those of the sons in the wrongful death claim. See OCGA § 51-4-2 (a). His contention that he represented only Mrs. Wynn ignores the fact that Mrs. Wynn represented the sons' direct interests in the claim. See generally *Toporek v. Zepp*, 224 Ga. App. 26, 28 (2) (479 SE2d 759) (1996). It also ignores the fact that Montgomery took most of his legal fees directly out of

the sons' share of the proceeds. Furthermore, Montgomery owed a duty of reasonable care to the sons as third-party beneficiaries of his relationship with Mrs. Wynn. See *Kirby v. Chester*, 174 Ga. App. 881, 884 (2) (331 SE2d 915) (1985); OCGA § 51-4-2. This enumeration lacks merit.

8. Montgomery contends the trial court erred in allowing expert testimony on the issue of his legal duties to the sons and in charging the jury as to duties he owed, when he was not their attorney. Based on our holding in Division 7, this enumeration is without merit.

9. Montgomery claims the trial court erred in not allowing him to introduce evidence that the sons were represented by their own attorney. Inasmuch as the sons did not retain counsel until several months after the claim was settled, Montgomery has not shown how the evidence was relevant or its exclusion harmful. The trial court did not abuse its discretion in disallowing the evidence. See generally *Opatut v. Guest Pond Club*, 188 Ga. App. 478, 480-481 (3) (373 SE2d 372) (1988).

10. Montgomery argues the trial court erred in submitting the issue of punitive damages to the jury when there was no evidence that he acted wilfully, wantonly, or demonstrated an entire want of care which would raise the presumption of conscious indifference to consequences. We disagree. The expression "conscious indifference to consequences" "relates to an intentional disregard of the rights of another, knowingly or willfully disregarding such rights." (Citations and punctuation omitted.) *Read v. Benedict*, 200 Ga. App. 4, 6-7 (2) (406 SE2d 488) (1991). The jury was authorized to conclude that evidence that Montgomery assisted Mrs. Wynn and Home Insurance in dividing the proceeds in spite of her clear conflict of interest showed, at least, a conscious indifference to consequences. See *Toporek*, supra. Legal malpractice, fraud, or breach of a fiduciary duty may warrant the imposition of punitive damages. See OCGA § 51-12-5.1; *Read*, supra; *Thomas v. White*, 211 Ga. App. 140, 141 (438 SE2d 366) (1993). A jury question was presented.

11. Montgomery claims there was no evidence of bad faith or stubborn litigiousness necessary to justify submitting the issue of attorney fees to the jury. There being some evidence of bad faith, such as the evidence discussed in Divisions 3 and 8, the issue was properly presented to the jury. See *Spring Lake Property &c. v. Peacock*, 260 Ga. 80, 81 (390 SE2d 31) (1990); *Caswell v. Jordan*, 184 Ga. App. 755, 759 (4) (362 SE2d 769) (1987) (physical precedent only).

12. Montgomery's argument that the trial judge erred in not recusing himself upon Montgomery's oral motion is without merit because Montgomery did not comply with Uniform Superior Court Rule 25 and has not asserted facts and circumstances sufficient to show partiality. See generally *Stephens v. Ivey*, 212 Ga. App. 407, 408

(2) (442 SE2d 248) (1994).

## Case No. A97A1050

13. Home Insurance contends the trial court erred in denying its motion for judgment n.o.v. It claims that under the wrongful death statute it had a duty to deal only with Mrs. Wynn (through her attorney); it had no duty to notify the children or to make sure they were notified because Mrs. Wynn was the only person who could bring or settle the wrongful death claim; and there was no confidential or fiduciary relationship between Home Insurance and the sons. For the reasons which follow, we agree and reverse.

No fiduciary relationship exists between an injured claimant and an insured's insurance carrier. *Daniel v. Conrad*, 242 Ga. 119, 120 (249 SE2d 603) (1978). Indeed, the interest of an injured claimant is obviously antagonistic to that of the tortfeasor and his insurer; they deal with each other at arm's length. See *Clinton v. State Farm &c. Ins. Co.*, 110 Ga. App. 417, 424 (2) (b) (138 SE2d 687) (1964).

Home Insurance not only had no duty to the sons, it had an affirmative duty to negotiate only with Mrs. Wynn on the wrongful death claim. See OCGA § 51-4-2 (a), (c). As discussed above, Mrs. Wynn had a clear conflict of interest at the time she negotiated with Home Insurance. However, that fact does not render Home Insurance liable or convert its actions in dealing at arm's length with its adversaries into an act of "conspiring to defraud." Home Insurance negotiated with Mrs. Wynn only from the adversarial position of its tortfeasor insured. Its interest was in making certain that each claim related to Mr. Wynn's death was expressly settled in order to eliminate the possibility that its insured would be exposed to further liability. We note that it is sound public policy to encourage parties to negotiate settlements to the end that litigation may be avoided. See *Williams v. St. Paul Cos.*, 228 Ga. App. 656 (___ SE2d ___) (1997).

Although an attorney for Home Insurance reminded Mrs. Wynn that the settlement offer was to satisfy the wrongful death, loss of consortium and pain and suffering claims, informed her that an allocation between the claims would have to be made, and suggested factors to be considered, Mrs. Wynn, through her attorney, actually made the decision regarding the allocation of the proceeds. Mrs. Wynn had complete control over the family's prosecution of the case and had sole authority to settle the wrongful death case. See *Morris*, supra. She was not obligated to accept any settlement terms proposed by Home Insurance. See generally *Williams*, supra. That Mrs. Wynn did allocate the settlement proceeds was a matter between her and the sons. It was not the conduct of Home Insurance that caused Mrs. Wynn's dilemma, but the fact that she represented parties with

conflicting interests. Id. The law is clear that if a spouse fails to prudently settle a wrongful death claim, the children have a cause of action against her. See *Morris*, supra.

There being no evidence that Home Insurance was involved in any conspiracy to defraud the sons or that it assisted Mrs. Wynn or Montgomery in breaching their duties to the sons, the trial court erred in denying Home Insurance's motion for judgment n.o.v. See generally *Rivers v. Lynch*, 257 Ga. 555, 557 (361 SE2d 162) (1987).

*Case No. A97A1053*

14. In this contingent appeal, the sons raise issues regarding certain jury charges involving Montgomery's duties as an attorney. Because we are affirming the judgment against Montgomery and in favor of the sons in Case No. A97A1052, this appeal is moot and is therefore dismissed.

*Judgment reversed in Case No. A97A1050. Judgments affirmed in Case Nos. A97A1051 and A97A1052. Appeal dismissed in Case No. A97A1053. Pope, P. J., concurs. Blackburn, J., concurs as to Divisions 1-12 and Division 14 and concurs in judgment only as to Division 13.*

DECIDED NOVEMBER 6, 1997 — 

*Greene, Buckley, Jones & McQueen, John D. Jones, Troutman Sanders, Robert L. Pennington*, for Home Insurance Company.

*Taylor, Harp & Callier, John S. Taylor, Jefferson C. Callier*, for Dannie Wynn et al.

*Rhodes, Warner & Lomax, Robert R. Lomax*, for Jacqueline Wynn.

*Hawkins & Parnell, H. Lane Young II, Allen L. Broughton*, for Richard Montgomery.