## A98A0281. MILLER v. GEORGIA INTERLOCAL RISK MANAGEMENT AGENCY et al.

(501 SE2d 589)

ANDREWS, Chief Judge.

At issue in this appeal is whether an insurer which settled one of two claims arising from the alleged negligence of its insured acted in bad faith by settling with one of the claimants for the majority of the available coverage before attempting to negotiate a settlement with the other claimant. For the following reasons, we find no evidence of bad faith.

While operating a motorcycle with Sharon Crumpton as a passenger, John R. Miller collided with a garbage truck owned and operated by the City of Moultrie, Georgia. Miller and Crumpton suffered serious injuries and claimed that the accident was caused by the City's negligence. Through its participation in the Georgia Interlocal Risk Management Agency (GIRMA) (OCGA § 36-85-1 et seq.), the City had liability insurance covering the accident with a coverage limit of $1,000,000. Miller and Crumpton made separate claims against the City seeking settlement payments from the GIRMA insurance coverage. GIRMA, which contracted with Gallagher Bassett Services, Inc. to handle adjustment of the claims, settled with Crumpton for $900,000, leaving only $100,000 of insurance coverage available for payment on Miller's claim.

Miller sued GIRMA and Gallagher Bassett claiming they acted in bad faith in settling with Crumpton. He alleged that GIRMA and Gallagher Bassett are liable to him for punitive damages and for all damages awarded to him in his suit against the City arising out of the accident in excess of the available $100,000 in insurance coverage. Miller appeals from the trial court's order granting summary judgment in favor of GIRMA and Gallagher Bassett.

1. In *Allstate Ins. Co. v. Evans*, 200 Ga. App. 713, 714-715 (409 SE2d 273) (1991), we held that " '(a) liability insurer may, in good faith and without notification to others, settle part of multiple claims against its insured even though such settlements deplete or exhaust the policy limits so that remaining claimants have no recourse against (the) insurer.' [Cits.]" As we noted in *Evans*, a contrary rule would put insurers at risk of being liable to remaining claimants for amounts above the coverage limits, which would necessarily result in a general policy by insurers of paying claims only after they were reduced to judgment, and would discourage the sound public policy of encouraging settlements. Id. at 715; *Williams v. St. Paul Cos.*, 228 Ga. App. 656, 658 (492 SE2d 560) (1997). The public policy considerations for the rule adopted in *Evans* are equally applicable to liability insurance coverage provided under GIRMA. See *Walston v. Holloway*, 203 Ga. App. 56 (416 SE2d 109) (1992); *Gilbert v. Richardson*, 264

Ga. 744, 751-752 (452 SE2d 476) (1994).

2. In alleging that GIRMA through its claims adjuster, Gallagher Bassett, settled with Crumpton in bad faith, Miller does not allege that $900,000 was an unreasonable payment to Crumpton considering the severity of her injuries. Rather, he claims the insurer acted in bad faith because it settled with Crumpton without attempting to negotiate a settlement with him and that the remaining insurance coverage is inadequate to compensate him for his injuries. Even if the insurer settled with Crumpton without conferring with Miller, this is not evidence of bad faith. Miller had no right to a pro rata division of the insurance proceeds, and the insurer had no legal obligation to confer with him before settling with Crumpton. See *Evans*, supra. Whether to evaluate claims for settlement one at a time or together is in the discretion of the insurer. *Liguori v. Allstate Ins. Co.*, 184 A2d 12, 17 (N. J. Super. Ct. Ch. Div. 1962).

*Judgment affirmed. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 14, 1998 — 

*Dwight H. May, James M. Bivins*, for appellant.
*Alexander & Vann, William C. Sanders, Young, Thagard, Hoffman, Scott & Smith, James B. Thagard*, for appellees.