**SECOND DIVISION**
**MILLER, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2019**

# In the Court of Appeals of Georgia

A19A0690. LEANHART et al. v. KNOX.

McMILLIAN, Judge.

This case presents an issue of first impression concerning the trial court's authority to apportion between two claims pursuant to a "High-Low" Agreement when the Agreement is silent on the issue. As more fully set forth below, we must vacate the trial court's order and remand for further proceedings consistent with this opinion.

The underlying facts are not in dispute. Paul Knox was severely injured and later died from injuries he suffered when the motorcycle he was riding crashed after swerving to miss a waste receptacle allegedly left out in the street by workers from A-1 Sanitation Service, Inc. His widow, Toni Knox, filed negligence claims against A-1: (1) as Paul's surviving spouse for Paul's wrongful death ("Wrongful Death

Claim") and (2) as Administrator of Paul's estate for the suffering he endured before he died and funeral and burial expenses ("the Estate Claim"). After several years of discovery and motions practice, the case proceeded to trial. While the jury was deliberating, Knox and A-1 entered into a "High-Low Settlement Agreement" ("High-Low Agreement"), which provided:

Terms:

- Any verdict in excess of One Million Dollars will be satisfied by payment of One Million dollars ($1,000,000).

- In the event of a defense verdict or a verdict of less than $375,000, Defendant's Insurer will pay three hundred seventy-five thousand dollars ($375,000) to Plaintiff.

- Plaintiff will dismiss this matter with prejudice and fully release Defendant and its agents and employees.

- Neither party shall have any appeal.

The jury subsequently entered an award of $1,000,000 on the claims of the Estate and $3,000,000 on the Wrongful Death Claim. Recognizing the conflict between her roles as Paul's heir and representative of his Estate while also acting individually and as the representative of Paul's children on the Wrongful Death

2

Claim, Knox filed a motion requesting that the trial court apportion the High-Low funds between the claims. However, she also took an active role in the apportionment proceedings by urging the trial court to allocate 100 percent of the High-Low Funds to the Estate so that Paul's children would not share in the High-Low Funds, arguing that Paul was estranged from his children and had not left them anything in his will and would not want them to share in the funds. A few days later, three of Paul's four children filed a motion to intervene in order to assert their rights as wrongful death heirs (the "Children"[1]). The Children also filed a response to the motion to apportion, arguing that they had an absolute right to share in the proceeds pursuant to the wrongful death statute and the trial court should apportion the funds between the claims based on the jury's verdict, which would result in an allocation of 75 percent of the High-Low funds to the Wrongful Death Claim and 25 percent of the funds to the Estate Claim. Following a hearing, the trial court granted the Children's motion to intervene but then allocated 100 percent of the High-Low funds to the Estate

[1] Although the motion to intervene was filed on behalf of only three of Paul's four children and the notice of appeal was also filed by those same three children, the appellants' brief contains a footnote that the fourth child is now represented by their counsel and the "Children, therefore, speak as one." Although Knox argues that the child who did not participate in the intervention proceedings has now waived the right to participate in any further proceedings in this case, that issue is not before us, and we do not address it.

Claim, pointing to, among other things "the relationships between the heirs and the deceased and the wishes of the deceased as evidenced by the record[.]" The Children then filed this appeal.

A high-low agreement is a settlement agreement which sets a fixed range of payment such that the defendant agrees to pay the plaintiff a minimum recovery and plaintiff agrees to accept a maximum amount based on the possible outcomes at trial. *Broda v. Dziwura*, 286 Ga. 507, 507, n.2 (689 SE2d 319) (2010). Thus, like any other settlement agreement, it is a contract and must be analyzed according to the rules governing the construction of contracts. *H & E Innovation, LLC v. Shinhan Bank America, Inc.*, 343 Ga. App. 881, 885 (1) (808 SE2d 258) (2017) ("Because a settlement agreement is a contract, it is subject to the usual rules of statutory construction."). Although the High-Low Agreement in this case does not mention any particular claim that is being settled and is silent as to how the funds should be allocated, there is no dispute that the Hi-Low Agreement was intended to settle all the claims being tried by the jury when the settlement was reached.[2] Further, there is also

_____

[2] We note that although not executed until after the hearing on the motion to apportion, the release Knox signed, unlike the High-Low Agreement, contained specific language that the settlement was "for the purpose of making a full and final compromise adjustment and settlement of any and all claims, . . ."

4

no dispute that the High-Low funds are insufficient to satisfy both claims. The question then is how to allocate the insufficient funds between the two claims in the face of a silent agreement.

Because the settlement agreement does not address the allocation of funds and in the absence of clear precedent to guide us, we believe the proper starting point is to look to the claims that were filed and settled, as well as the various parties' rights and responsibilities with respect to those claims. See *Nash v. Allstate Ins. Co.*, 256 Ga. App. 143, 146 (567 SE2d 748) (2002) (where insufficient insurance funds were paid out without specifying the funds were in satisfaction of any particular claim, this Court looked to the claims that had been filed and then determined that none of the "meager" insurance funds available should be used to satisfy a hospital lien where the Estate had not asserted a claim for medical expenses but the children had asserted a wrongful death claim).

Here, Knox, as Paul's surviving spouse, sought damages for Paul's wrongful death, and as Administrator of his Estate, damages for his shock, fright and terror prior to the collision, all components of the mental pain and suffering endured by Paul upon impact up until he died, and funeral and burial expenses. Our law is clear that Knox was the proper party to bring these claims and not only had the right to

5

bring the claims but also had the authority to settle or compromise the claims without any input from Paul's Children. See OCGA § 51-4-2 (a) (designating the surviving spouse, if there is one, as the proper party to bring a wrongful death claim); OCGA § 51-4-2 (c) (giving the surviving spouse the authority to release the defendant without concurrence of the children); OCGA § 53-7-45 ("Personal representatives are authorized to compromise, adjust, arbitrate, assign, sue or defend, abandon, or otherwise deal with or settle debts or claims in favor of or against the estate."); *Memar v. Styblo*, 293 Ga. App. 528, 528 (667 SE2d 388) (2008). ("[T]he exclusive right to bring an action on behalf of [an] estate resided in the estates legal representative, executor, or administrator.").

But along with the right to bring and settle both causes of action, Knox also had a fiduciary obligation to both the wrongful death heirs, i.e., the Children, and to those persons or entities with claims against the Estate. As our Supreme Court explained with respect to wrongful death claims:

> Although the statute confers exclusive standing upon the surviving spouse, it does not vest in the spouse all of the rights to the claim. The spouse is required to share the proceeds with the children. [OCGA § 51-4-2 (d) (1)] A duty is owed to the children and part of that duty is to act prudently in asserting, prosecuting and settling the claim. The failure to

6

do this could subject the spouse to liability for breach of duty as a representative.

(Citation and punctuation omitted.) *Brown v. Liberty Oil & Refining Corp.*, 261 Ga. 214, 215 (1) (a) (403 SE2d 806) (1991). See OCGA § 53-7-1 ("A personal representative is a fiduciary . . . .) Also, as we explained in *Home Ins. Co. v. Wynn*, 229 Ga. App. 220 (493 SE2d 622) (1997), a case in which the surviving spouse was also acting in several different legal capacities and would have benefitted most from allocating as little of the settlement proceeds as possible to the wrongful death claim:

> In a wrongful death case, the surviving spouse acts as the children's representative and owes them the duty to act prudently in asserting, prosecuting and settling the claim and to act in the utmost good faith. . . . At the same time, an executrix of an estate occupies a fiduciary relationship toward parties having an interest in the estate; that relationship also requires the utmost good faith.

(Citation omitted) Id. at 222 (1).

We agree in this situation it was proper for Knox to request that the trial court apportion the funds instead of attempting to allocate them herself, and it was proper to allow the Children to intervene in the action to protect their interests. However, Knox acted in contravention of her fiduciary duties to the Children by arguing that

7

none of the settlement funds should be allocated to the Wrongful Death Claim because Paul would had left them out of his will and he would not have wanted them to share in the recovery. See *Wynn*, 229 Ga. App. at 222-23 (1) (1997) (surviving spouse breached her fiduciary duty under wrongful death statute by allocating funds to claims in which she was the sole beneficiary).

Similarly, we have found no authority and the parties have pointed to none that would allow the trial court to consider the decedent's wishes in apportioning the claims between the Estate and Wrongful Death Claims so as to allocate all the funds to one claim at the expense of the other. It is clear that the Children had an absolute statutory right under OCGA § 51-4-2 to share in any recovery on that claim, despite any wishes Paul may have had, so we fail to see how Paul's desires are relevant to apportioning between the claims. OCGA § 51-4-2 (a) specifically gives both minor and adult children a right to share in the proceeds of a wrongful death recovery and makes no provision for consideration of a decedent's relationship with his children, even if they are adults and may have been estranged from their parent. As our Supreme Court has explained, the Wrongful Death Statute is in derogation of common law and must be strictly construed. Thus, "[t]he express language of the Act will be followed literally and no exceptions to the requirements of the Act will be

read into the statute by the courts." (Citation and punctuation omitted.) *Tolbert v. Maner*, 271 Ga. 207, 208 (1) (518 SE2d 423) (1999). Accordingly, even when there are compelling circumstances, we cannot ignore the plain language of the statute and rewrite it to suit the facts of a particular case. The right to make such revisions or amendments is placed in the hands of the legislature, not the courts.

Even though we find the trial court erred by failing to allocate any of the settlement proceeds to the Wrongful Death Claim, that does not answer the question of how the proceeds should be apportioned. The Children argue that the trial court should look to the jury's verdict for guidance. We know of nothing that would prevent the trial court from exercising its discretion to consider the jury's verdict in allocating the settlement funds, although it certainly would not be required to do so. Further, it would also be within the trial court's discretion to consider such factors as the expenses that might be deducted from any recovery allocated to the Estate,[3] such as funeral and burial expenses, as well as the fact that Knox alone has borne the costs of bringing the litigation, which had proceeded all the way through trial. Accordingly, and mindful that we cannot give the trial court a precise roadmap to follow in

[3] The Wrongful Death Statute specifically exempts any wrongful death recovery from any debts or liabilities of the decedent. OCGA § 51-4-2 (e).

9

allocating the High-Low Funds, we vacate the portion of the trial court's order allocating all of the settlement proceeds to the Estate Claim[4] and remand for further proceedings consistent with this opinion.

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded with direction. Miller, P. J., and Reese, J., concur.*

---

[4] We vacate only in part because the trial court granted the Children's motion to intervene in the same order, and because that issue is not before us, that portion of the order stands affirmed.