**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 16, 2026**

# In the Court of Appeals of Georgia

A25A1847. CANNON v. SAFECO INSURANCE COMPANY OF ILLINOIS.

WATKINS, Judge.

In 2020, we affirmed a $1.65 million judgment against Trever Cannon for the pre-death pain and suffering of Camie Joyner who (along with her husband) was killed after the vehicle Cannon was operating crossed the median of Interstate 516 in Savannah and hit their oncoming vehicle.[1] Cannon subsequently sued his liability insurer, Safeco Insurance Company of Illinois, based on its handling of the claims

---

[1] See *Cannon v. Barnes*, 357 Ga. App. 228 (850 SE2d 436) (2020), cert. denied 2021. It appears that Cannon's first name was misspelled in the notice of appeal in the prior case and thus appears as "Trevor" on the docket in the prior appeal and in this Court's prior opinion.

against him.[2] The State Court of Chatham County granted Safeco's motion to dismiss. Because we agree with Cannon that the trial court erred, we reverse.

> A motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.[3]

"On appeal, this Court reviews the denial of a motion to dismiss de novo. However, we construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor."[4]

So viewed, the record shows that, in February 2013, Cannon was driving a Ford F-250 truck when he was cut off by a vehicle driven by an unknown "John Doe."

---

[2] Cannon also alleged malpractice and related claims against the attorneys and law firms that represented him in the prior litigation. Cannon ultimately settled those claims, and they are not at issue in this appeal.

[3] *Stendahl v. Cobb County*, 284 Ga. 525, 525(1) (668 SE2d 723) (2008) (citation and punctuation omitted).

[4] *Landmark Am. Ins. Co. v. Khan*, 307 Ga. App. 609, 609(1) (705 SE2d 707) (2011) (citation and punctuation omitted).

While attempting to avoid striking the other vehicle, Cannon lost control of the truck and crossed the median. He collided head-on with the Joyners' vehicle, killing Camie Joyner and her husband and injuring their minor daughter.

Cannon was an insured driver on a policy of insurance issued by Safeco (the "Policy"), which had limits of liability for bodily injury coverage of $50,000 for one person's bodily injury, including death, and $100,000 for each occurrence. In July 2014, less than 17 months after the accident, Safeco filed an interpleader action in superior court and tendered the Policy limits of $100,000 to the registry of that court. Notably, Safeco secured no release of any potential claim against Cannon. Safeco prayed that the defendants be "required to interplead and settle between themselves their right to the sum paid by Safeco into the registry of this Court, and that Safeco be discharged from any and all other financial responsibilities under its contract of insurance... resulting from the vehicular accident[.]"

A month later, Linda Barnes, Joyner's mother and the administrator of her estate, filed suit against Cannon, the "John Doe" driver, and the Georgia Department of Transportation ("GDOT"), ultimately seeking damages for Joyner's pre-death

pain and suffering (the "Barnes Estate Claim"). Safeco undertook Cannon's defense of these claims.

In 2017, Barnes settled with GDOT, leaving only the Barnes Estate Claim against Cannon and John Doe pending.[5] The case proceeded to trial in February 2019, resulting in a jury verdict in favor of Barnes for $3 million. The jury apportioned 55 percent of the fault to Cannon and 45 percent to John Doe, and judgment was entered against Cannon in the amount of $1.65 million, an amount well in excess of the Policy limits.

This lawsuit against Safeco followed. Cannon alleged "negligence/bad faith failure to settle" in that Safeco filed an interpleader action and tendered the bodily injury limits into the court registry without any consideration of Cannon's interests. Cannon also alleged breach of contract and the implied duty of good faith and fair dealing, based on Safeco's failure to provide an adequate defense to the Barnes Estate Claim, and breach of contract based on Safeco's refusal to pay for an appeal bond. In

---

[5] In 2018, Carol and Tina Joyner, as the administrators of the estate of Stephen Joyner (Camie's husband) and co-guardians of the minor child, sued Cannon for wrongful death of Stephen and Camie Joyner, Stephen's conscious pain and suffering, and the minor child's personal injuries. The Joyners ultimately settled those claims. See Division 1(b), infra.

addition to the damages stemming from the excess judgment, Cannon sought punitive damages and attorney fees and litigation expenses pursuant to OCGA § 13-6-11.

Safeco moved to dismiss the complaint for failure to state a claim upon which relief could be granted. Following a hearing, the trial court granted Safeco's motion. This appeal follows.

1. Cannon argues that the trial court improperly dismissed his tort claim for negligence/bad faith failure to settle. We agree.

(a) Under Georgia law, that "[a]n insurance company may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits."[6] Importantly, "[i]n deciding whether to settle a claim within the policy limits, the insurance company must give equal consideration to the interests of the insured."[7]

---

[6] *Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 684(1) (580 SE2d 519) (2003); see also *GEICO Indem. Co. v. Whiteside*, 311 Ga. 346, 352(2) (857 SE2d 654) (2021) ("The elements of a negligent or bad faith failure to settle a claim are straightforward: The insured may sue the insurer for failure to settle only when the insurer had a duty to settle the case, breached that duty, and its breach proximately caused damage to the insured beyond the damages, if any, contemplated by the insurance contract.") (citation and punctuation omitted).

[7] *S. Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268(1) (416 SE2d 274) (1992).

The trial court found that Safeco had no duty nor opportunity to resolve the Barnes Estate Claim because Barnes never made a demand for payment of the policy limits before Safeco filed its interpleader complaint and tendered the policy limits into the court registry. In arriving at this conclusion, the trial court relied on *First Acceptance Insurance Co. of Ga. v. Hughes*,[8] in which the Supreme Court of Georgia "clarif[ied]" that, to the extent it had been unclear,[9] "an insurer's duty to settle arises only when the injured party presents a valid offer to settle within the insured's policy limits."[10]

*Hughes* did not address the issue in this case, however: whether an insured would be entitled to relief in tort under any set of provable facts, including affirmative conduct by the insurer that has the effect of precluding an offer to settle within policy limits. Or more specifically: whether an insurer accords its insured the same faithful

---

[8] 305 Ga. 489, 489 (826 SE2d 71) (2019).

[9] See id. at 492(1), n.2 (citing *Kingsley v. State Farm Mut. Auto. Ins. Co.*, 353 FSupp2d 1242, 1249 (ND Ga. 2005), which discussed prior "ambiguity" in Georgia law).

[10] *Hughes*, 305 Ga. at 489.

consideration it gives it own interest, which is typically a jury issue,[11] when it unconditionally tenders the policy limits and thus cuts off the possibility for the insured to obtain a release of any of the claims against him.[12]

*Hughes* involved a multi-vehicle collision in which the insured later died from his injuries and five others had known injury claims. The insurer determined early on that the insured was liable for the loss and that his exposure for claims exceeded the policy limits.[13] The insurer's attorney reached out to the claimants, seeking to arrange a joint settlement conference in an attempt to resolve the claims.[14] Counsel for two of the injured parties ("the plaintiffs") responded, stating their interest in attending a settlement conference and, in the alternative, offering to settle their claims for the

---

[11] See *Whiteside*, 311 Ga. at 352(2) ("Generally, it is for the jury to decide whether the insurer, in view of the existing circumstances, has accorded the insured the same faithful consideration it gives its own interest.") (citation and punctuation omitted).

[12] Cf. *Fortner v. Grange Mut. Ins. Co.*, 286 Ga. 189, 191 (686 SE2d 93) (2009) (holding that the defendant insurance company's conditions on accepting a settlement offer were within its control and could be considered by a jury in determining whether the defendant acted reasonably in failing to settle).

[13] *Hughes*, 305 Ga. at 490.

[14] Id. at 491.

available policy limits.[15] No settlement with the plaintiffs was reached, and a jury later returned a verdict well in excess of the policy limits.[16] The insured's estate administrator sued the insurer, alleging negligence and bad faith in its failure to settle the plaintiffs' claim within policy limits.[17]

The Supreme Court held, as a "threshold issue" in *Hughes*, that an insurer's duty to settle arises only when the injured party presents a valid offer to settle within the insured's policy limits."[18] In other words, an insurer does not have an affirmative duty to engage in negotiations concerning a settlement demand that is in excess of the insurance policy's limits. The Court then concluded that the plaintiffs' response to the insurer in *Hughes* was clear enough to constitute a valid offer to settle, even though the offer to settle had been presented as an alternative.[19] However, the offer did not include an acceptance deadline, and under the facts of that case, the insurer did not

---

[15] Id.

[16] Id.

[17] Id.

[18] *Hughes*, 305 Ga. at 489, 492(1).

[19] *Hughes*, 305 Ga. at 495(2).

act unreasonably in failing to accept the offer before it was withdrawn.[20] The Supreme Court added: "[a] settlement of multiple claims that included [one of the plaintiffs' claims, which was by far the most severe] was in the insured's best interest as it would reduce the overall risk of excess exposure, and [the plaintiffs] had expressed their interest in attending a settlement conference with the other claimants."[21]

Here, the trial court found that under the "clear rule" articulated in *Hughes*, Cannon's claim against Safeco failed as a matter of law because Barnes had not made a time-limited offer to settle within policy limits.

Under the circumstances, we conclude that neither the general rule stated in *Hughes* nor the public policy considerations behind the rule (including the potential for collusion between the insured and an injured party[22]) precludes such liability as a

---

[20] Id. at 489-90.

[21] Id. at 497(2).

[22] See *Hughes*, 305 Ga. at 493(1) n.3 (agreeing with the "sound policy reasons for this limitation" observed by the Eleventh Circuit in *Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F2d 1536, 1553(III)(A)(5) (11th Cir. 1991): otherwise, "each insured [could] introduc[e] the after-the-fact testimony of the injured party that he would have settled within the policy limits if the insurer had offered the limits or had engaged in aggressive settlement negotiations. This testimony … is speculative[ and], in a number of cases, might be the result of collusion between the insured and the injured party, and would therefore also be unreliable because it would be

matter of law. To hold otherwise would encourage an insurer, on notice that its insured faces liability well in excess of the policy limits, to cut off the possibility of settling any of those claims with a release for the insured. Rather than "reduc[ing] the overall risk of excess exposure," filing the interpleader action under the circumstances alleged in this case was not only *not* in Cannon's "best interest,"[23] but it removed incentive for any claimant to settle a claim against Cannon within the policy limits.[24]

---

self-serving[]") (punctuation omitted).

[23] See *Hughes*, 305 Ga. at 497(2).

[24] See generally *Pareti v. Sentry Indemnity Co.*, 536 So.2d 417, 424(II) (La. 1988) (noting that "payment of the policy limits which does not release the insured from a pending claim (e.g., unilateral tender of policy limits to the court, the claimant or the insured), even if sufficient to terminate the duty to defend under the wording of the policy involved, raises serious questions as to whether the insurer has discharged its policy obligations in good faith"); *State Farm Mut. Auto. Ins. Co. v. Crane*, 217 CalApp3d 1127, 1136(II) (1990) ("The implication of [policy] language [giving the insurer 'the right to investigate, negotiate, and settle any claim or suit'] is that the insurer is authorized to settle lawsuits, not to pay unilaterally the policy limits to a plaintiff. Moreover, it is generally recognized that such an unconditional payment, which has the effect of bankrolling a plaintiff's case against the insured, is not made in good faith.").

(b) The trial court dismissed Cannon's bad-faith failure to settle claim on an alternative ground, relying on this Court's decision in *Allstate Ins. Co. v. Evans*.[25] The trial court found:

> Safeco had the discretion to resolve as many claims as it could by entering into settlements of other claims via the interpleader, where Safeco tendered the full $100,000 policy limits, without giving rise to bad-faith liability to remaining claimants. The Complaint and First Amended Complaint establish that this is exactly what happened here. (Complaint ¶ 43.) Safeco was able to resolve all the claims asserted against [Cannon], other than the Barnes Estate Claim[.]

First, this is a complete misreading of the complaint. The trial court cites to paragraph 43 of the complaint, which alleged that in *June 2017*, "counsel for the Joyners negotiated a settlement of the Joyner Claims with ALLSTATE [the UIM carrier] and CANNON, which had the effect of leaving only [the Barnes Estate Claim] pending against CANNON in the Barnes Action." However, Safeco filed the interpleader action in *July 2014*, before the filing of the Barnes Estate Claim (in August 2014) and well before the Joyners filed the Joyner Claims in a separate action (in 2016) "after having unsuccessfully attempted to bring tort claims in the

---

[25] 200 Ga. App. 713, 714 (409 SE2d 273) (1991).

interpleader action." Moreover, the paragraph of the complaint that the trial court relies on clearly states that it was *Allstate*, not Safeco, that settled the other claims against Cannon.

Second, the trial court's reliance on *Evans* is misplaced as it discussed an insurer's potential liability to *claimants* if the insurer settles some but not all claims following a multi-vehicle collision.[26] In *Evans*, this Court reversed the trial court's ruling that the insurer was liable to the two non-settling claimants for the full amount of their judgments (and not just the remainder of the policy limits).[27] This Court agreed with other jurisdictions that had confronted this "particular issue" and had "held uniformly that a liability insurer may, in good faith and without notification to others, settle part of multiple claims against its insured even though such settlements deplete or exhaust the policy limits so that remaining claimants have no recourse against the insurer."[28] A contrary rule, the *Evans* court noted, would promote litigation, discourage settlements "no matter how favorable to [the] insured the terms

---

[26] *Evans*, 200 Ga. App. at 713.

[27] Id.

[28] Id. at 714 (citations and punctuation omitted).

... might be," and increase the likelihood that the insured would be left with liability in excess of his policy limits.[29]

*Evans* is inapplicable here. Safeco did not "settle" any claim when it unconditionally tendered the policy limits in the interpleader action. And, as noted above, *Evans* (and its progeny[30]) addressed the insurer's liability to other claimants, not to its insured, and emphasized the potential benefit to the insured when claims can be settled without requiring them all to be reduced to judgment.

The complaint in this case stated a claim that Safeco acted negligently by failing to place its financial interest above Cannon's when it initiated the interpleader action and handed over the policy limits without first attempting to obtain a release; under either theory of dismissal, the trial court erred.

---

[29] Id.

[30] See *Miller v. Ga. Interlocal Risk Mgmt. Agency*, 232 Ga. App. 231, 231(1) (501 SE2d 589) (1998) (applying *Evans* to liability insurance coverage provided through a city's participation in the Georgia Interlocal Risk Management Agency and holding that a claimant had no right to a pro rata division of the insurance proceeds or for the insurer to confer with him before settling with the other claimant); *Walston v. Holloway*, 203 Ga. App. 56, 57 (416 SE2d 109) (1992) (applying *Evans* in uninsured motorist coverage context and holding that a claimant had no recourse against the insurer where there was no evidence to suggest it acted in bad faith in settling with two other claimants).

2. In related arguments, Cannon contends that the trial court erred in dismissing his claims for breach of contract and breach of the implied duty of good faith and fair dealing based on Safeco's alleged failure to provide an adequate defense and to pay for an appeal bond.[31] Again, we agree.

(a) First, Cannon argues that the duty to provide a competent defense is inherent in an insurer's duty to provide a defense; otherwise, "an insurer could presumably satisfy its contractual duty to defend by simply assigning defense counsel, having them file an answer, and merely show up for trial." We agree that the trial court erred in dismissing this breach-of-contract claim and the related claim for breach of the implied duty of good faith and fair dealing.[32]

---

[31] The complaint also alleged breach of contract based on Safeco's failure to settle. In his response to the motion to dismiss, however, Cannon elected to proceed in tort on this claim. See generally *Wanna v. Navicent Health, Inc.*, 357 Ga. App. 140, 157-58(6) (850 SE2d 191) (2020) ("A plaintiff may pursue any number of consistent or inconsistent remedies…, and any election of remedies, if necessary, could be made before judgment. … It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him.") (citations and punctuation omitted).

[32] See *Stewart v. SunTrust Mortgage, Inc.*, 331 Ga. App. 635, 639(4) (770 SE2d 892) (2015) ("A duty of good faith and fair dealing is implied in all contracts. A breach of that duty may arise where a party to a contract acts arbitrarily or capriciously in executing its contractual duties.") (citations omitted).

14

According to the complaint, Safeco forced the attorneys, whom Safeco had hired to represent Cannon, to defend him in the Barnes Estate Claim "on a shoestring" budget. In this vein, Cannon alleges that, although one of the attorneys recommended to Safeco that it retain an accident-reconstruction expert who had provided favorable opinions in Cannon's criminal case, Safeco's agent vetoed that suggestion, explaining to the attorney that there was "not much more we can do [as] we paid our policy limits." Cannon also alleged that Safeco failed to interview a key witness who would have corroborated his testimony that he was cut off by the John Doe driver.

Accepting these allegations as true and viewing them in the light most favorable to Cannon, we conclude that he stated a claim sufficient to survive the motion to dismiss.

The relevant provision of the Policy[33] provides:

We [Safeco] will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto

---

[33] The Policy was attached as an exhibit to and incorporated into Safeco's answer, which the trial court could consider in considering the motion for failure to state a claim. See *Roberts v. DuPont Pine Prods., LLC*, 352 Ga. App. 659, 661(1) (835 SE2d 661) (2019).

accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

Interpreting nearly identical language, this Court held:

> The insurer's duty is both to defend actions *and* to pay judgment against the insured. Otherwise, where the damages exceed the policy coverage, the insurer could walk into court, toss the amount of the policy on the table, and blithely inform the insured that the rest was up to him. This would obviously constitute a breach of the insurer's contract to defend actions against the insured, for which premiums had been paid, and should not be tolerated by the courts.[34]

"To read the policy otherwise would render a near nullity a most significant protection afforded by the policy — that of defense."[35]

---

[34] *Anderson v. U.S. Fid. & Guar. Co.*, 177 Ga. App. 520, 521-22 (339 SE2d 660) (1986) (citation and punctuation omitted).

[35] Id. at 521. The parties have not cited to any Georgia case, and we have found none, specifically addressing whether the insured is required to provide an "adequate" or "competent" defense. However, other courts addressing this issue have concluded that "[t]o satisfy its [contractual] obligation to defend, an insurer ... must provide an *adequate* defense." See, e.g., *Carrousel Concessions, Inc. v. Florida Ins. Guar. Ass'n.*, 483 So2d 513, 516 (Fla. 3d DCA 1986).

Safeco contends that Cannon is attempting to hold Safeco vicariously liable for counsel's alleged malpractice. But construed in the light most favorable to Cannon, the complaint alleges that Safeco made a financial decision to put its interests above Cannon's. At this stage of the proceedings, the complaint has adequately stated a claim for breach of contract and breach of the implied duty of good faith and fair dealing with respect to Safeco's duty to defend.

(b) Cannon argues that the trial court further erred in dismissing his breach of contract claim based on Safeco's "contractual duty to pay for an appeal bond" and that the Barnes Estate Claim "triggered the policy provision" requiring Safeco to pay "premiums on an appeal bond" on Cannon's behalf. Again, we agree that dismissal was premature.

The Policy provides that Safeco "will pay on behalf of an insured: ... *Premiums* on appeal bonds and bonds to release attachments in any suit we defend." In dismissing Cannon's breach-of-contract claim, the trial court found that the plain language of the Policy only required Safeco to pay "premiums" and did not "obligate[] Safeco to procure an appeal bond."[36]

---

[36] Noting the "dearth of case law on this issue," the trial court found instructive a federal district court case that refused to read into a policy with "seemingly

17

This is too narrow a reading of the complaint,[37] which references the obligation in the Policy "to pay premiums for an appeal bond" before alleging that Safeco breached its duty by "refus[ing] to pay for any such bond." Cannon's complaint was sufficient to put Safeco on notice of the breach of contract claim asserted against it.[38]

According to Safeco,

> Cannon failed to plead that he applied for an appeal bond, that he qualified for an appeal bond, or that he owned assets adequate to collateralize an appeal bond. Safeco never breached any obligation to pay a bond premium because ... Cannon never got to the point when a premium would be due.

---

identical" language an implicit duty to furnish an approximately $2.9 million appeal bond. See *Dogra v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-01841, slip op. at 12 (D. Nev. Sept. 23, 2016) (unpublished). We note two important distinctions between *Dogra* and this case: 1) the insured in *Dogra* elected not to appeal the jury verdict, "purportedly due to a financial inability to post the ... bond"; and 2) the *Dogra* court concluded that the insurance company was entitled to summary judgment because the plaintiffs had failed to establish a breach of contract based on an implicit duty to "furnish" the bond." Id., slip op. at 4, 13. Here, Cannon did appeal the judgment against him, and Safeco has failed to show that he has not asserted a valid claim for breach of the Policy provision requiring Safeco to pay premiums on an appeal bond.

[37] See *Stendahl*, 284 Ga. at 525(1).

[38] See *Babalola v. HSBC Bank, USA, N.A.*, 324 Ga. App. 750, 755(2)(b) (751 SE2d 545) (2013).

Safeco also argues that Cannon failed to plead how any alleged failure to pay a bond premium caused him damage.[39] However, "[i]t is no longer necessary for a complaint to set forth all of the elements of a cause of action in order to survive a motion to dismiss for failure to state a claim."[40]

At this early stage in the proceedings, Safeco has not shown that Cannon would not be entitled to relief under any state of provable facts asserted in support of this claim.[41] Accordingly, we reverse the dismissal of this breach-of-contract claim as well.

3. Finally, Cannon contends that the trial court erred in dismissing his claims for attorney fees and expenses under OCGA § 13-6-11 and for punitive damages.

The trial court dismissed these claims on the ground that the underlying claims failed as a matter of law. We held in Divisions 1 and 2 that the trial court erred in

---

[39] Safeco contends that Cannon could not have suffered any loss because this Court affirmed the judgment against him. However, Safeco has failed to cite to any authority to support this argument, and we do not consider it at this stage in the proceedings.

[40] *Roberts v. JP Morgan Chase Bank, N.A.*, 342 Ga. App. 73, 76 (802 SE2d 880) (2017) (citation and punctuation omitted).

[41] See *Stendahl*, 284 Ga. at 525(1).

dismissing Cannon's substantive claims. Accordingly, the court erred in dismissing the remaining claims as derivative.[42]

In sum, we cannot say at this early stage of the proceedings that Cannon could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. Accordingly, we reverse the trial court's order granting Safeco's motion to dismiss.

*Judgment reversed. Brown, C. J., and Barnes, P. J., concur.*

---

[42] See *Racette v. Bank of Am., N.A.*, 318 Ga. App. 171, 181(6) (733 SE2d 457) (2012). Cannon does not challenge the trial court's finding that his breach-of-contract claims did not support a claim for punitive damages. As the trial court noted, Cannon acknowledged that his claim for punitive damages was only predicated in tort.